[No. 33789-1-I. Division One. July 24, 1995.]

COSTCO WHOLESALE CORPORATION, *Respondent*, v. WORLD WIDE LICENSING CORPORATION, *Appellant*.

---

[5]*See also* RCW 51.32.225.

*Anthony Haselman*, for appellant.
*Rodney T. Harmon*, for respondent.

WEBSTER, J. — This case involves modifications allegedly made to a contract for the sale of jewelry. Costco Wholesale Corporation contends that the price it agreed to pay Worldwide Licensing Corporation was modified when Worldwide's agent agreed, in writing, to rebate part of the purchase price. Worldwide alleges Costco orally modified the contract by promising to buy more jewelry. Each party contends that the modification alleged by the other is barred by the statute of frauds, which requires certain contracts to be written. We hold that the contract's initial satisfaction of the statute passes through to the modification, but that the contract as modified can only be enforced up to the quantity stated. Thus, the statute of frauds bars the oral promise to purchase additional

jewelry, but not the rebate claim. Although the rebate claim is not barred, Costco must still prove that there was a modification. Because there is an issue of material fact about the extent of the agent's apparent authority to agree to the rebate, we reverse the summary judgment in favor of Costco and remand for trial.

## FACTS

Worldwide Licensing Corporation[1] sells jewelry to wholesale buyers. Worldwide's sales are negotiated by independent sales representatives known as brokers. When Worldwide decided to pursue Costco as a potential buyer, it contacted Loren Coleman, an independent sales representative. Ed Dose, a Worldwide division president, flew to Seattle to meet Coleman. Coleman and Dose met with Megghan Harruff, a Costco division manager.

At the meeting, Coleman presented Worldwide's merchandise, including its packaging. Costco agreed to purchase 5 pallets of 416 boxes each, for a total of $74,880.00, and paid by check. After Harruff described the purchase as "test marketing", and expressed the opinion that the merchandise would quickly sell out, the parties discussed the possibility of subsequent orders. Dose told Harruff that reordering would take eight weeks. Outside of the meeting and Harruff's hearing, Coleman urged Dose to produce more than the five pallet loads ordered. Although the jewelry was a specialty item not easily marketed, Dose reluctantly agreed to manufacture three additional pallets.

In Costco's opinion, the jewelry it received was poorly packaged, and not the quality it expected. Subsequently, Costco did not sell the jewelry as quickly as it had hoped. Coleman told Worldwide about Costco's displeasure. Although Worldwide believed in the quality of its product, it was concerned about selling Costco the already manufactured three pallet loads of jewelry. Dose told Coleman to "approach Costco with an $8 per box adjustment in price

---

[1]The pleading caption misspells appellant's name; the proper name is Worldwide.

*providing they agreed to purchase the remaining 3 pallets at the adjusted price".* According to Dose, Coleman "indicated" that Costco "had agreed to the additional order". Coleman's declaration, on the other hand, asserts that Dose authorized an $8 per unit rebate, but it says nothing about the alleged additional order, or any instruction to make the rebate contingent on a promise to buy the other three pallets. Costco agreed to the rebate amount, and sent a rebate form to Coleman. Coleman signed it and faxed a copy to Worldwide. Worldwide entered the rebate in its accounting system, pending Dose's approval. When Costco did not order the three additional pallets, Worldwide refused to pay the rebate. When Worldwide paid Coleman's sales commission, however, it was based on the rebated sales price.

Costco sued Worldwide, seeking $16,640 (2,080 boxes at $8 per box). Worldwide denied the rebate agreement and alleged the statute of frauds as an affirmative defense. The trial court entered summary judgment in favor of Costco.

## DISCUSSION

■ We review the trial court's grant of summary judgment de novo. *Finkelstein v. Security Properties, Inc.*, 76 Wn. App. 733, 736, 888 P.2d 161, *review denied* 127 Wn.2d 1002 (1995). The only cause of action alleged is breach of a promise to rebate $16,640. Worldwide asserts three alternative defenses. First, Worldwide contends the rebate modification is unenforceable because it does not satisfy the Uniform Commercial Codes statute of frauds.[2] Second, Worldwide contends the modification was an exchange of

---

[2]RCW 62A.2-201(1) provides: "Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing".

promises in which Worldwide promised to rebate, and Costco promised to purchase three additional pallets of jewelry. Because Costco did not perform, it is not entitled to enforce the rebate. Third, Worldwide contends that if Coleman agreed to the rebate without securing Costco's promise to purchase additional jewelry, Coleman exceeded his authority and the modification is not binding on Worldwide.

## A

### Statute of Frauds

■ ■ This case addresses the interplay between the statute of frauds and contract modifications under the U.C.C. The statute of frauds denies enforcement of a contract for the sale of goods worth more than $500 when no writing evidences the agreement. RCW 62A.2-201. When a contract is modified, U.C.C. § 2-209(3) requires the statute of frauds to be satisfied if the contract as modified falls within the provisions of the statute of frauds.[3] The Costco/Worldwide contract, as modified, involved a sale of goods for more than $500 and is within the statute of frauds. Therefore, the only issue is whether the statute has been satisfied.

■ ■ The original contract satisfied the statute of frauds. The plain language of U.C.C. § 2-209(3) only requires a satisfaction of the statute if the contract as modified is within the statute; it does *not* require a satisfaction for the modification itself. We hold that the origi-

---

[3]RCW 62A.2-209(3) provides: "The requirements of the statute of frauds section of this Article (RCW 62A.2-201) must be satisfied if the contract as modified is within its provisions". Although the contract, as modified, includes some terms from the original contract, and some terms from the modification, "the new contract is viewed as a whole" when applying the statute. Restatement (Second) of Contracts § 149, comment a (1979). The following examples help clarify when a "contract as modified" is within the statute. A sales contract originally for a $400 television, but modified to include a second $400 television is, as modified, within the statute of frauds because the price now exceeds $500. A contract for a $1,000 stereo later modified to exclude all components except a $200 tuner is, as modified, outside of the statute because the price is less than the $500 threshold.

nal satisfaction of the statute passes through to the contract as modified.[4] Thus, a modification to a contract which initially satisfied the statute does not require a new memorandum.[5] This interpretation respects plain statutory language and the common commercial practice of oral modifications[6]

Assuming the contract in this case was modified to include the rebate (a price modification) and the additional purchase (a quantity modification), the pass-through power of the original contract's satisfaction infuses the contract as modified with the characteristic of enforceability. The rebate, which modified the price, did not require an additional writing to satisfy the statute of frauds.[7] *But*, under the statute of frauds, a contract can only be enforced up to the quantity shown in the writing. RCW 62A.2-201(1), (3), *Alaska Independent Fishermens Mktg. Ass'n v. New England Fish Co.*, 15 Wn. App. 154, 157, 548 P.2d 348 (1976). Without a writing showing the three additional pallet load order, the quantity modification is not enforceable by way of action or defense, despite the pass-through nature of the original satisfaction of the statute. II E. Allan

---

[4]2 Arthur L. Corbin, *Contracts* § 304 (1950); U.C.C. § 2-209, comment 3; Beth A. Eisler, *Modification of Sales Contracts Under the Uniform Commercial Code : Section 2-209 Reconsidered*, 57 Tenn. L. Rev. 401, 430 (1990).

[5]We disagree with decisions that require every modification to be in writing. *See, e.g. Van Den Broeke v. Bellanca Aircraft Corp.*, 576 F.2d 582, 584 (5th Cir. 1978); *Cooley v. Big Horn Harvestore Systems, Inc.*, 767 P.2d 740, 744 (Colo. Ct. App. 1988), *aff'd in part, rev'd in part*, 813 P.2d 736 (Colo. 1991); and *Green Constr. Co. v. First Indemnity of Am. Ins. Co.*, 735 F. Supp. 1254, 1261 (D.N.J. 1990), *aff'd*, 935 F.2d 1281 (3d Cir. 1991). "There is not a scintilla of support in the drafting history of § 2-209(3) for the notion that § 2-209(3) was designed to require a formalistic validation for unsupported modifications and to incorporate the requirements of § 2-201 for all modifications". John E. Murray, Jr., *The Modification Mystery: Section 2-209 of the Uniform Commercial Code*, 32 Vill. L. Rev. 1, 15 (1987); see also James J. White & Robert S. Summers, *Uniform Commercial Code* § 1-6 (3d ed. 1988).

[6]RCW 62A.2-209(3), .1-102(2)(a)-(b); Robert A. Hillman, *A Study of Uniform Commercial Code Methodology: Contract Modification Under Article Two*, 59 N.C. L. Rev. 335, 360 (1981).

[7]Because the rebate modification does not need to resatisfy the statute of frauds, we do not address Costco's contention that the written rebate satisfied RCW 62A.2-201(2) (confirmation between merchants to which recipient does not object).

Farnsworth, *Contracts* §§ 6.7 n.44, 6.2 n.22-24 (1990); RCW 62A.2-201(1); *see also* RCW 62A.2-201(3)(b); and U.C.C. § 2-209, comment 3 (an authenticated "memo is limited in its effect to the quantity of goods set forth in it"). Therefore, Worldwide cannot avoid summary judgment on the rebate claim by arguing that Costco breached an oral promise to purchase more jewelry.

In summary, we hold that the contract, as modified to include a rebate, has satisfied the statute of frauds, but the alleged promise to purchase additional jewelry is barred. The court's summary judgment order was proper insofar as its effect was to strike Worldwide's affirmative defense.

▮ The absence of a statute of frauds defense does not, however, prove or disprove the *existence* or *terms* of a contract, nor does absence of the defense alter the plaintiff's burden, which is to prove the contract, the defendant's breach, and damages. U.C.C. § 2-201, comment 3; *Perdue Farms, Inc. v. Motts, Inc. of Mississippi*, 459 F. Supp. 7, 16 (N.D. Miss. 1978). Because enforcement of any promise to purchase additional jewelry is barred by the statute of frauds, the record contains no dispute over the terms of the modification. On this record, if there was a modification, it was a rebate for $16,640 in favor of Costco. There still remains, however, an issue over the *existence* of the modification. We therefore turn to Worldwide's alternative contention, that the rebate modification does not bind Worldwide because Coleman exceeded his authority as agent.

## B

### Agency

▮ An agency is created by the actions of two parties. The agent manifests a willingness to act subject to the principal's control, and the principal expresses consent for the agent to so act. *Ford v. United Bhd. of Carpenters & Joiners of Am.*, 50 Wn.2d 832, 838, 315 P.2d 299 (1957).

Agents may be general or special. "A general agent is an agent authorized to conduct a series of transactions involving a continuity of service". Restatement (Second) of Agency § 3(1) (1958). "A special agent is an agent authorized to conduct a single transaction or a series of transactions not involving continuity of service". Restatement (Second) of Agency § 3(2). The distinction between general and special agents is one of degree, and important factors include the number of acts performed, number of persons with whom the agent must deal, and the length of service. Restatement (Second) of Agency § 3, comment a; *Start v. Shell Oil Co.*, 202 Or. 99, 260 P.2d 468, 471 (1953) (salesperson authorized to solicit orders for agricultural chemicals a general agent).

 The principal's liability for unauthorized entry into a contract differs depending on the characterization of the agent, the scope of liability being more narrow if the agent is special. Restatement (Second) of Agency § 161A; *cf.* Restatement (Second) of Agency § 161. A special agent who is not authorized or apparently authorized to enter into a contract generally cannot bind the principal. Restatement (Second) of Agency § 161A; *Taylor v. Smith*, 13 Wn. App. 171, 175, 178-79, 534 P.2d 39 (1975) (real estate agent, normally characterized as a special agent, did have apparent authority to receive payments on behalf of seller). A special agent's apparent authorization arises only from objective manifestations of the principal (or authorized manifestations by others) to the third party seeking to impose liability on the principal. *Smith v. Hansen, Hansen & Johnson, Inc.*, 63 Wn. App. 355, 363-64, 818 P.2d 1127 (1991), *review denied*, 118 Wn.2d 1023 (1992); Restatement (Second) of Agency § 8. "Whether an agent has apparent authority to make a contract depends upon the circumstances and is to be decided by the trier of fact". *Barnes v. Treece*, 15 Wn. App. 437, 443, 549 P.2d 1152 (1976). The burden of establishing apparent authority rests on the one asserting its existence. *Schoonover v. Carpet World, Inc.*, 91 Wn.2d 173, 178, 588 P.2d 729 (1978).

The record in this case establishes an agency in which Worldwide was a principal and Coleman was its agent. We interpret the evidence in worldwide's favor and find that Coleman lacked actual authority because he represented Worldwide only in this specific transaction. Coleman could bind Worldwide only if he had actual or apparent authority. Drawing all inferences in favor of Worldwide, Coleman did not have actual authority because Dose authorized him to grant a rebate only in exchange for Costco's promise to buy three additional pallets of jewelry. As regards apparent authority, the evidence is inconclusive. Costco's buyer, Megghan Harruff, alleges that she never dealt with any person other than Coleman. Harruff's allegation is an admission that Costco did not rely on any spoken manifestations from Worldwide about the scope of Coleman's authority.[8] There were unspoken manifestations by Worldwide — the appointment of Coleman to negotiate the initial transaction and to make an offer of compromise to Costco. But the evidence does not conclusively establish the appointment manifested to Costco that Coleman had authority to settle the warranty dispute by promising to rebate more than 22 percent of the purchase price. Nor is there any evidence that business custom clothes such a broker with the apparent authority to negotiate and settle a warranty dispute by agreeing to a substantial refund. *Cf. Lumber Mart Co. v. Buchanan*, 69 Wn.2d 658, 662, 419 P.2d 1002 (1966) (apparent authority can arise from principal's placement of agent in a position such that prudent persons, "reasonably conversant with business usages and customs" reasonably assume the agent has certain authority); *see also Shell Oil Co.*, 260 P.2d at 473 (buyer could not assume that giving of oral

---

[8]Costco contends Worldwide "confirmed" Coleman's authority by reducing Coleman's commission to reflect the rebate. The posttransaction commission reduction could not have manifested Coleman's authority to Costco at the time of the alleged modification. *Smith v. Hansen, Hansen & Johnson, Inc.*, 63 Wn. App. at 366 n.16. The commission reduction and Worldwide's entry of the rebate in its accounting system more properly relate to whether Worldwide ratified the modification. *See, e.g., Smith*, 63 Wn. App. at 369, and *Barnes*, 15 Wn. App. at 443-44 (silence as ratification).

warranty by agricultural chemical salesperson was within usages and customs of the industry). This record cannot sustain a finding, as a matter of law, that Coleman had apparent authority to rebate part of the purchase price.

Using Costco's alleged promise to create an issue of material fact may seem to conflict with the court's holding on the statute of frauds. But the statute of frauds merely proscribes judicial enforcement, by way of action or defense, of the alleged promise. RCW 62A.2-201(1). In this context, Worldwide is not alleging Costco's promise in an effort to procure *enforcement*. It is seeking instead to establish the lack of *any* valid modification. Worldwide can utilize the three pallet load evidence to prove that no valid modification existed, without offending the statute of frauds proscription on enforcement.

In conclusion, there is an issue of material fact concerning the existence of the modification because Worldwide is bound only if Coleman had actual or apparent authority. Therefore, summary judgment was inappropriate. We strike Worldwide's statute of frauds defense, reverse the trial court's grant of summary judgment, and remand for proceedings consistent with this opinion. Reversed and remanded.

BAKER, C.J., and PEKELIS, J. Pro Tem., concur.