MASEK DISTRIBUTING, INC., Plaintiff,

v.

FIRST STATE BANK & TRUST
COMPANY, Defendant and
third party plaintiff,

v.

E–Z PAY USED CARS, INC. d/b/a
Northtown Truck & Auto and Paul
Colyer, Third party defendants.

Nos. 94–2393–JWL, 94–2356–JWL.

United States District Court,
D. Kansas.

Nov. 9, 1995.

Christine Y. Martin, Spencer, Fane, Britt & Browne, Kansas City, MO, Brian F. Stayton, Spencer, Fane, Britt & Browne, Overland Park, KS, James M. Worden, Professional & Business Center, Scottsbluff, NE, for Masek Distributing Inc.

Robert J. Fleming, Craig R. Richey, Wilbert & Towner, P.A., Pittsburg, KS, for First State Bank & Trust Company.

Richard D. Loffswold, Jr., Richard D. Loffswold, Jr., P.A., Girard, KS, for E–Z Pay Used Cars Inc., Paul Colyer.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Masek Distributing, Inc. (Masek) brings this action to enforce a letter of credit it alleges E–Z Pay Used Cars, Inc. (Northtown) requested and First State Bank & Trust Company (First State) issued. The following motions are presently before the

court: Masek's motion to amend the pre-trial order (Doc. # 49); Masek's motion for summary judgment (Doc. # 25); and First State's motion for summary judgment (Doc. # 23). For the reasons stated below, the court denies each motion.

## I. *Motion to Amend the Pretrial Order*

■ Masek seeks to amend the pretrial order to include a negligence theory of liability. Masek, however, filed its motion out of time. Nevertheless, the court has considered and now denies Masek's motion.

Federal Rule of Civil Procedure 16(e) states that the pretrial order "shall be modified only to prevent manifest injustice." Masek has not demonstrated that, without its amendment, manifest injustice would result. Masek has made no showing that the facts on which it bases its motion did not exist or could not be synthesized before the deadline passed to amend the pretrial order. Further, permitting Masek to amend the pretrial order at this date would prejudice First State. Permitting Masek's proposed amendment would require the court to reopen discovery in order to give First State adequate opportunity to prepare. Absent an acceptable explanation by Masek for its tardiness, the court declines to do this. For these reasons, the court denies Masek's motion.

## II. *Motions for Summary Judgment*

### A. *Facts* [1]

This dispute centers on a document titled "SLCA Letter—Sufficient Line of Credit Authorization." (SLCA) The one page SLCA is addressed to Masek and dated December 29, 1992. First State's name and address have been typed in as the issuing bank. In its entirety, the body of the SLCA reads:

> In consideration of your company shipping merchandise to our customer and delivering to us the copies of Invoices or MSO's (evidence of title), we certify the following: That (Dealer Name) *Northtown Truck and Auto Rt. 1 Box 984 Pittsburg, KS 66762* [typed into blank space] has established a sufficient line of credit with us for the purchase of Products distributed by Masek

Distributing, Inc. We hereby agree to accept, honor and remit payment immediately on drafts by Masek Distributing, Inc., against Products ordered and shipped on open bill of lading to the above dealer. If indicated below, all orders must be approved by telephone contact with this bank prior to shipment. This authorization and agreement is valid until discontinued in writing by an officer of this bank received at your offices in Gering, Nebraska. In event of a decision to discontinue this Agreement, all drafts for the products already shipped to the dealer at the time written notice is received by Masek Distributing, Inc., will still be honored by this bank.

The signature of Ron Wehmeyer, then an Assistant Vice–President of First State, follows. The SLCA does not limit the amount of credit it purports to authorize. Blanks for telephone approval and other special instructions appear at the bottom of the SLCA. None of the blanks is marked. Neither party has found an original of the SLCA letter. Masek has submitted a facsimile copy.

On December 23, 1992, Wes Atkins, then an employee of Masek, gave a copy of the SLCA to Paul Colyer, an employee of Northtown. The copy did not have First State typed in as the issuing bank, did not have Northtown typed in as the dealer establishing a line of credit, and was not signed. The parties dispute whether or not Mr. Colyer ever took the blank copy of the SLCA to First State. Mr. Colyer does not remember.

Masek alleges that on December 29, 1992, First State issued the SLCA, which Masek maintains is a letter of credit, via facsimile to Masek. First State's phone records from June 1992 through February 1993 include no calls from First State to the area code where Masek received the facsimile.

■ In early September 1993, Mr. Wehmeyer and Mr. Colyer spoke about some correspondence from Masek concerning a letter of credit. Mr. Colyer stated that he did not request a letter of credit be issued to Masek. On September 7, 1993, Mr. Wehmeyer wrote a letter to Masek indicating

1. The following facts are uncontroverted for purposes of this motion unless otherwise indicated.

that it would not honor any drafts concerning Northtown.[2]

On May 25, 1994,[3] Masek drafted First State on the SLCA. First State refused to honor the draft. This suit ensued.

### B. Standard for Summary Judgment

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pacific R.R.*, 740 F.Supp. 1519, 1522–23 (D.Kan. 1990). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

### C. Discussion

The parties' cross motions for summary judgment raise essentially three[4] issues: first, whether or not the SLCA meets the statutory requirements for a letter of credit; second, whether or not Mr. Wehmeyer had the authority to bind First State; and third, whether or not Masek complied with the terms of the SLCA. Each party makes various arguments that these issues warrant summary judgment on its behalf and preclude summary judgment in favor of its opponent. The court examines each issue in turn.

#### 1. The Statutory Requirements for a Letter of Credit

K.S.A.[5] § 84–5–102 states that chapter 84, article 5 applies "to a credit issued by

2. Masek denies First State's factual contention that "on or about September 7, 1993, Paul Colyer or Ron Wehmeyer learned that Masek alleged it had a valid letter of credit for its shipments to Northtown." Masek states that Mr. Wehmeyer and Mr. Colyer "knew or should have known that First State had issued a letter of credit to Masek." In support, Masek cites the SLCA and some testimony by Wes Atkins, a former employee of Masek. Neither the SLCA nor Mr. Atkins' testimony, however, addresses the factual contention being denied. Thus, First State's contention stands uncontroverted and is deemed admitted for purposes of this motion. Under D.Kan.R. 56.1 (formerly Rule 206(c)), a party disputing a factual contention shall refer with particularity to those portions of the record upon which it relies. Failure to do so operates to admit the contention. This rule reflects the *Celotex/Liberty Lobby* rule that an unsupported, bare denial will not avoid summary judgment.

3. In the motion for summary judgment and in its response to Masek's motion, First State asserts that Masek drafted the SLCA on May 25, 1994. Masek, by failing to respond to that paragraph, admits it for purposes of this motion. The court notes, however, that in the pretrial order Masek alleges that the draft occurred on May 31, 1994. The parties may wish to determine whether or not this date is truly in contention.

4. Within its primary arguments, First State also appears to allege that even if the SLCA were a letter of credit, First State revoked it prior to Masek's draft. First State does not point to any evidence indicating that its claimed revocation complied with the SLCA, which expressly provides for revocation. As a result, a fact issue regarding this issue remains.

5. The parties agree that Kansas law governs this case. The court agrees. Under *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), this court is bound in this diversity action by the choice of law provisions of the forum state of Kansas. Kansas follows "lexi loci contractus", meaning that the law of the state where the contract is made applies to the provisions of the contract. *See Civic Associates v. Security Ins. Co.*, 749 F.Supp. 1076, 1079

a bank if the credit requires a documentary draft or a documentary demand for a payment." The statute defines a credit or letter of credit as "an engagement by a bank or other person made at the request of a customer and of a kind within the scope of this article (section 84–5–102) that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." *Id.* § 84–5–103(1)(a). Although a letter of credit need not have a particular form of phrasing, it must be in writing and signed by the issuer. *Id.* § 84–5–104(1). Finally, if a document satisfies the preceding requirements a letter of credit is established when the beneficiary receives the letter. *Id.* § 84–5–106(1)(b).[6]

■ Masek states that the SLCA fully complies with the statutory requirements. First State contends, however, that material questions of fact exist regarding whether or not a customer requested a letter of credit and whether or not Masek ever "received" a letter of credit.[7]

As noted above, the definition of credit requires that a customer request be the impetus for a letter of credit. *Id.* § 84–5–103(1)(a). "A 'customer' is a buyer or other person who causes an issuer to issue a credit." *Id.* § 84–5–103(1)(g). First State maintains that whether or not Northtown requested the letter of credit is a material question of fact. The court agrees.

In its statement of facts accompanying its motion, Masek contends that Northtown, through Mr. Colyer, requested the SLCA. Mr. Atkins, Masek's employee, delivered a blank copy of the SLCA to Mr. Colyer. Masek, however, has not cited any evidence indicating who filled in the blank SLCA form. Further, Mr. Colyer, who does not remember taking the SLCA to First State, testified at

his deposition that he did not request a letter of credit on behalf of Masek. This evidence indicates that Masek has not satisfied its initial burden for summary judgment. The failure may stem from Masek's choice not to respond to this argument in its reply papers. Regardless, a question of fact exists concerning whether or not a customer requested the SLCA. This fact question precludes summary judgment in favor of Masek.

In addition to preventing summary judgment in favor of Masek, First State contends that the statutory requirements for a letter of credit compel an entry of summary judgment on its behalf. In its motion for summary judgment, First State argues that even if the SLCA met the definition of a letter of credit, that letter of credit was never "received". Masek has produced a facsimile copy of the SLCA. First State maintains that only receipt of the original establishes the credit. The court disagrees.

■ The sole authority First State cites for its argument is K.S.A. § 84–5–106(1)(b), which states that "[u]nless otherwise agreed a credit is established as regards the beneficiary when he receives a letter of credit or an authorized written advice of its issuance." The plain language of this section does not address the necessity of an original. First State has not cited, nor has the court's research found, any case interpreting this language to require an original. Another section of the Kansas statutes, however, indicates that under certain circumstances, receipt of a facsimile can effectuate a letter of credit.

K.S.A. § 84–5–104(2) (1983) states that "[a] telegram may be a sufficient signed writing if it identifies its sender by an authorized authentication. The authentication may be in

---

(D.Kan.1990); *Simms v. Metropolitan Life Ins. Co.,* 9 Kan.App.2d 640, 685 P.2d 321 (1984). First State is a corporation organized and existing under the laws of Kansas. It has its principal place of business in Kansas. The letter of credit, which is the subject matter of this lawsuit, was allegedly issued in Kansas.

**6.** These facts only implicate a beneficiary receiving a letter of credit. Consequently, the court does not discuss the other possible methods of establishing a credit.

**7.** First State also maintains that whether or not Mr. Wehmeyer signed the SLCA is a question of fact. Mr. Wehmeyer states that the signature is his but does not recall the act of signing. Although the court doubts this raises a fact question, the court need not rule on this issue because whether or not a customer requested the SLCA clearly constitutes a fact question, which precludes summary judgment on behalf of Masek.

code and the authorized naming of the issuer in an advice of credit is a sufficient signing." Although the statute does not mention facsimiles, blind adherence to the maxim *expressio unius est exclusio alterius* would be inappropriate in this instance. Kansas enacted this section in 1965. Given the state of technology in 1965, the court cannot conclude that the absence of facsimiles from the statute reflects legislative intent.

A telegram, however, does not require the sender to have a copy of the letter in order to transmit. This distinction does not prevent a telegram and facsimile from being analogous. Like the notes from which a telegram may be sent, the copy used to transmit the facsimile may not be the binding copy. For example, two parties could agree to finalize a contract using the following procedure. The first party transmits the unsigned contract for the second party to review. The second party returns the contract with an authorized signature via facsimile transmission. The first party's endorsement of an authorized signature then finalizes the contract. In neither instance would the copy of the contract used to transmit be binding. As the statute makes clear, the authorized authentication, not the method of transmission, is the paramount concern. Accordingly, this court concludes that the Kansas Supreme Court would find that receipt of a facsimile identifying its sender by an authorized authentication suffices to establish a letter of credit.[8] The parties do not raise and the court does not address whether or not the facsimile at issue has an authorized authentication.

This court's decision in *Vanden Brul v. MidAmerican Bank & Trust Co.,* 820 F.Supp. 1311 (D.Kan.1993) is not to the contrary. In *Vanden Brul,* this court held that the Vanden Bruls' failure to include the original promissory note and letter of credit relieved MidAmerican from its obligation to honor the Vanden Bruls' demand. *Id.* at 1315. Unlike here, the letter of credit in *Vanden Brul* required, *inter alia,* presentation of the original letter of credit before any draft would be honored. *Id.* at 1311. Thus, an original letter of credit was significant in *Vanden Brul* for an entirely different reason than alleged here. Moreover, this court's holding in *Vanden Brul* rested on the terms of the letter of credit itself—terms negotiated between the parties. *Vanden Brul* did not address whether or not receipt of a facsimile could effectuate a letter of credit. Masek's failure to produce the original SLCA does not provide a basis to grant First State summary judgment.

### 2. *Ron Wehmeyer's authority*

Even if the SLCA fully complied with the statutory requirements, it would not bind the bank unless Ron Wehmeyer, by signing, had the authority to bind the bank. First State contends that Mr. Wehmeyer signed with apparent authority and bound the bank. The court concludes that Mr. Wehmeyer's apparent authority depends on whether or not Masek's reliance on Mr. Wehmeyer was reasonable, a material question of fact.

First State and Masek agree that Mr. Wehmeyer was an agent of First State. They also agree that Mr. Wehmeyer only had actual authority to bind the bank to letters of credit in the amount of $25,000 or less. This limitation raises the initial question of whether Mr. Wehmeyer was a special or general agent.

The Kansas courts have not addressed this issue in a similar context. The

---

**8.** The facsimile could also operate as written advice. Advising banks issue authorized written advice. K.S.A. § 84–5–106 cmt. 1. Section 84–5–103(1)(e) defines advising bank as "a bank which gives notification of the issuance of a credit by another bank." Masek alleges that First State issued the SLCA. The facts of this case therefore involve only one bank. Nevertheless, under similar circumstances a Missouri court has declared a photocopy from the issuing bank to be written advice.

In *Thornbury v. Morris Oil Co. Inc.,* 846 S.W.2d 238 (Mo.Ct.App.1993), the issuing bank sent the beneficiary a photocopy of the letter of credit and kept the original for its bank files. As here, the bank argued that the letter of credit was never established because the beneficiary never received the original letter. Like Kansas, Missouri has adopted Article 5 of the Uniform Commercial Code. The relevant sections of Missouri's and Kansas's statutes mirror one another. The *Thornbury* court concluded that the photocopy constituted an authorized written advice, which effectuated the line of credit. *Id.* at 244–245. No meaningful difference exists between a received photocopy and a received facsimile.

Restatement (Second) of Agency § 3 (1958) recognizes that the distinction between a special and general agent is a matter of degree and turns on continuity of service. "One who is an integral part of a business organization and does not require fresh authorization for each transaction is a general agent." Id. at § 3, cmt. a. The extent of discretion an agent has regarding the transactions he or she is employed to perform does not bear on whether the agent is special or general. Id. at § 3, cmt. c. "Thus, one is a general agent if he is in continuous employment, although the employment consists of purchasing articles as the employer directs with no discretion as to the kinds, amounts, or prices to be paid." Id. These principles have long guided courts at every level when characterizing an agent as special or general. See, e.g., City of St. Louis v. Praprotnik, 485 U.S. 112, 172 n. 22, 108 S.Ct. 915, 949 n. 22, 99 L.Ed.2d 107 (1988) (Stevens, J., dissenting); Armstrong v. Republic Realty Mortgage Corp., 631 F.2d 1344, 1349 n. 5 (8th Cir.1980); Lloyd v. Salzachtal, 373 F.Supp. 267, 277 (E.D.N.Y.1974); Todd Shipyards Corp. v. City of Athens, 83 F.Supp. 67, 88 (D.Md.1949); Stortroen v. Beneficial Finance Co., 736 P.2d 391, 395 (Colo.1987); Costco Wholesale Corp. v. World Wide Licensing Corp., 78 Wash.App. 637, 898 P.2d 347, 352 (1995). The court concludes that the Kansas Supreme would apply these principles to analyze this issue.

At his deposition, Mr. Wehmeyer testified that he was employed at First State from 1971 until 1993 or 1994. He was a loan officer from the late 1970s until his departure. During that time, although his title changed, his responsibilities remained largely the same. During that period, he had actual authority to issue loans, although the dollar amount of his authority fluctuated.

■■■ The court concludes that Mr. Wehmeyer was a general agent of First State. He was continuously employed as a loan officer. The dollar ceiling on his actual authority to issue the loans limited his discretion but did not convert Mr. Wehmeyer into a special agent.

■■■ At all relevant times, Mr. Wehmeyer's actual authority was limited to loans of $25,000. Masek contends, however, that Mr.

Wehmeyer had apparent authority to issue letters of credit with no loan limit. Apparent authority exists where the "intentional actions or words of the principal toward third parties [ ] reasonably induce or permit third parties to believe that an agency relationship exists." Mohr v. State Bank, 241 Kan. 42, 46, 734 P.2d 1071, 1076 (1987). First State claims that, at a minimum, whether Masek was reasonably induced to believe Mr. Wehmeyer had the authority to issue an open ended letter of credit is a fact question. The court agrees with First State.

Masek admits its experience drafting and using letters of credit. From this alone a jury could draw an inference that Masek's reliance on an Assistant Vice–President to issue unilaterally an unlimited letter of credit was unreasonable. Further, the pretrial order in this action lists as a remaining mixed question of law and fact whether Mr. Wehmeyer had apparent authority to issue an open ended letter of credit. The court concludes that the apparent authority of Mr. Wehmeyer is a material question of fact. For this additional reason, Masek's motion for summary judgment is denied.

### 3. Masek's compliance with the SLCA's terms

■■■ First State asserts that the SLCA requires Masek to send First State copies of the invoices contemporaneously with shipment of product to Northtown. First State states that either the plain language of the SLCA or the ambiguous language, as construed against its drafter, Masek, compels this conclusion. Masek did not deliver invoices contemporaneously with product shipment. This failure, argues First State, requires summary judgment on its behalf. Masek responds that the plain language unambiguously requires both product and invoices to be delivered before First State becomes obligated to honor any draft, but that those two deliveries need not occur contemporaneously.

The plain language cited by both parties is as follows:

In consideration of your company shipping merchandise to our customer and delivering to us the copies of Invoices or MSO's

(evidence of title), we certify the following: That (Dealer Name) *Northtown Truck and Auto Rt. 1 Box 984 Pittsburg, KS 66762* [typed into blank space] has established a sufficient line of credit with us for the purchase of Products distributed by Masek Distributing, Inc. We hereby agree to accept, honor and remit payment immediately on drafts by Masek Distributing, Inc., against Products ordered and shipped on open bill of lading to the above dealer. The court agrees with Masek that this language is unambiguous. "[L]etters of credit are governed by the rules applicable to the construction of ordinary contracts." *Sports, Inc. v. Sportshop, Inc.*, 14 Kan.App.2d 141, 142, 783 P.2d 1318, 1319 (1989) (citation omitted). "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Gore v. Beren*, 254 Kan. 418, 427, 867 P.2d 330, 337 (1994). First State does not allege that the language conflicts with itself. Rather First State appears to assert that if "contemporaneously" were added to the language, it would have a different meaning than it does without the addition. Although true, this does not render the language, as it stands, ambiguous.

Close examination of First State's papers indicates that First State's interpretation arises, not from the language itself, but from First State's potential exposure if the language is read without inserting "contemporaneously". First State's potential exposure, however, stems from the plain language's lack of ambiguity. The body of SLCA invites the issuing bank to initial if telephone approval or each order is desired. No such initials appear. The SLCA has space for special or additional restrictions. The space is not filled. If, at trial, the SLCA proves to be a letter of credit issued by First State, then First State's potential exposure directly results from the terms negotiated by its agent. The language of the SLCA is not ambiguous.

As the preceding discussion foreshadowed, the court concludes that, by its plain language, the SLCA requires delivery of product to Northtown and invoice copies to First State before any drafts must be honored. The language simply does not require that the two conditions precedent occur contemporaneously. First State cites no case in which a court has read similar language to mean contemporaneously. First State offers no evidence of industry practice supporting its interpretation.

▮ According to the pretrial order, Masek delivered product to Northtown from January 1993 until August 1993. Masek sent invoices to First State on January 13, 1994 and May 25, 1994. On May 25, 1994, Masek also drafted the SLCA. Thus, with respect to the product represented by the January 13, 1993 invoices, Masek clearly complied with the SLCA. Viewed in a light most favorable to Masek, the May 25, 1994 invoices also were delivered to First State before the draft occurred. At worst, a fact question exists. Therefore, summary judgment cannot be granted to First State on the basis of Masek's lack of compliance with the SLCA's terms.

### 4. *Summary*

As shown above, both motions for summary judgment must be denied. The denial of Masek's motion stems from material questions of fact such as whether or not a customer requested the SLCA and whether or not Mr. Wehmeyer had apparent authority to bind First State to the SLCA. Fact questions similarly bar First State's motion. Whether or not Masek complied with the terms of the SLCA and whether or not First State revoked the SLCA before Masek drafted it remain undetermined. In addition, the court does not agree with First State's legal argument. Receipt of a facsimile can, under appropriate circumstances, establish a line of credit.

### III. *Order*

**IT IS THEREFORE BY THE COURT ORDERED** that Masek's motion to amend pre-trial order (Doc. # 49) is denied.

**IT IS FURTHER ORDERED** that Masek's motion for summary judgment (Doc. # 25) is denied.

IT IS FURTHER ORDERED that First State's motion for summary judgment (Doc. # 23) is denied.

IT IS SO ORDERED.