[No. 34729-6-II.   Division Two.   May 22, 2007.]

RANGER INSURANCE COMPANY, *Appellant,* v. PIERCE COUNTY ET AL., *Respondents.*

758

*Brett A. Purtzer*, for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *Douglas W. Vanscoy, Deputy*; and *Robert M. McKenna, Attorney General*, and *Glen A. Anderson, Assistant*, for respondents.

¶1 VAN DEREN, A.C.J. — This is the second appeal in Ranger Insurance Company's suit against Pierce County (County) based on the superior court clerk's (Clerk) distribution of Ranger's bail bond money for Granite State Insurance Company's bail bond obligations. In the first appeal, we remanded for trial on whether, in light of the limiting power of attorney accompanying each bond, the Clerk properly relied on the dual agent's own representations to apply and disburse Ranger's funds for Granite State's obligations. On remand, the trial court granted summary judgment to the County, finding that the Clerk did not violate the standard of care for court clerks in Washington. Ranger appeals, contending that disputes of material fact still exist about whether (1) the Clerk's conduct was negligent in light of the express limiting powers of attorney on each bond and (2) the Clerk could rely solely on the agent's known representation of multiple bonding companies in the absence of Ranger's actions suggesting apparent authority to use Ranger's money for another bonding company's obligations. Because the Coun-

ty's summary judgment motion did not address this issue of material fact, we reverse and remand again for trial.

## FACTS[1]

¶2 Ranger's agent, Signature Bail Bonds, was an authorized bail bonds agent for both Ranger and Granite State. *Ranger Ins. Co. v. Pierce County*, noted at 122 Wn. App. 1077, 2004 Wash. App. LEXIS 1894, at *1. Signature wrote four appearance bonds in Pierce County to secure the appearance of two criminal defendants, David J. Rogers and Brandon E. Sims. Signature wrote one of the bonds ($15,000) on cause no. 97-1-05295-7 from Ranger and the other three (a total of $20,000) from Granite State for cause no. 97-1-05295-7 for Rogers and cause no. 00-1-01029-1 for Sims.

¶3 All four of the bonds were forfeited because Rogers and Sims failed to appear. Signature directed Ranger to send $35,000 to the Clerk's registry to cover Rogers' forfeited bonds, misrepresenting to Ranger that two of its own bonds had been forfeited—the aforementioned $15,000 Ranger bond on cause no. 97-1-05295-7 and a $20,000 Ranger bond on cause no. 98-1-03952-5 that had not been forfeited. *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *4. The actual status of the Ranger and Granite State bonds was as follows:

| 1997 | Rogers | 97-1-05295-7 | $15,000 | Ranger Ins. | Forfeited |
| 1997 | Rogers | 97-1-05295-7 | $10,000 | Granite St. | Forfeited |
| 1998 | Rogers | 98-1-03952-5 | $20,000 | Ranger Ins. | Not Forfeited |
| 2000 | Sims | 00-1-01029-1 | $5,800 | Granite Ins. | Forfeited |
| 2000 | Sims | 00-1-01029-1 | $4,200 | Granite Ins. | Forfeited |

*Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *2.

¶4 It is not refuted that Ranger submitted, along with the check, an invoice requesting that the Clerk's office allocate $20,000 to Rogers cause no. 98-1-03952-5, which

---

[1] The facts are taken in most part from *Ranger Ins. Co. v. Pierce County*, noted at 122 Wn. App. 1077, 2004 Wash. App. LEXIS 1894, at *1-8 (2004). Both parties rely heavily on our statement of facts in this unpublished opinion, and they do not provide other evidence for most of the factual details.

was not forfeited, and $15,000 to Rogers cause no. 97-1-05295-7, which was forfeited. *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *4.[2] Furthermore, Ranger's $35,000 check to the Clerk referred to " 'State v. David Jack Rogers, Case No. 98-1-03952-5.' " *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *5. The Clerk entered the check for cause no. 98-1-03952-5 in the Pierce County Superior Court journal detail report as "cash bail." Clerk's Papers (CP) at 74. "The [C]lerk's actions were clearly in error, as Signature had previously posted a Ranger appearance bond for cause no. 98-1-03952-5." *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *5. Ranger had not posted any bonds for Sims.

¶5 Not only did Ranger direct that the $35,000 be used only for its obligations, but each of Ranger's bail bonds have a corresponding power of attorney certificate, which states:

> This power void if altered or erased, *void if used* with other powers of this company or *in combination with powers from any other surety company, void if used to furnish bail in excess of the stated face amount of this power*, and can only be used once . . . and provided *this Power-of-Attorney is filed with the bond and retained as a part of the court records.*

CP at 15 (emphasis added).

¶6 After the Clerk received Ranger's instructions, Signature's manager[3] directed the Clerk to apply Ranger's $35,000 check to cover Rogers' forfeited bond under cause no. 97-1-05295-7 ($15,000), Rogers' Granite State forfeited bond under cause no. 97-1-05295-7 ($10,000), and Sims' two forfeited bonds under cause no. 00-1-01029-1 ($10,000). The Clerk did as Signature directed. *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *5-6.

¶7 When Rogers and Sims were arrested, Signature filed to exonerate the forfeited bail moneys, "falsely stat[ing]

---

[2] Noting that appellate courts consider all facts submitted in the light most favorable to the nonmoving party, we assumed that the invoice existed in the first appeal although it was not in the record. *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *4-5. We assume the same here.

[3] James Barbieri was Signature's manager.

that it, not Ranger, had paid the forfeited bonds." *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *6. Based on Signature's misrepresentations, the trial court entered orders directing the Clerk to return the forfeited bail money to Signature. *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *7. The Clerk disbursed the $35,000 to Signature. *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *7 n.2. But Signature never returned the money to Ranger. *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *7.

¶8 On January 16, 2002, Ranger sued Pierce County, alleging that the Clerk was negligent in two ways: (1) disbursing Ranger's $20,000 for bonds written by Granite State[4] and (2) returning the forfeiture money to Signature, not Ranger. *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *7. The County moved for summary judgment, arguing that (1) Ranger was bound by the acts of its agent, Signature, and (2) the Clerk was entitled to quasi-judicial immunity. The trial court granted the County's summary judgment motion. *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *8.

¶9 Without reaching any remaining or potential issues that were not before us, including those relating to the Clerk's fiduciary responsibilities to persons required to pay money to its registry, we reversed for trial on the limited issues before us, concluding that (1) questions of material fact remained about whether, in light of the power of attorney accompanying each bond, Signature had apparent authority to receive money due Ranger that had been applied to Granite State's obligations and (2) the Clerk did not have quasi-judicial immunity in handling Ranger's bail money because processing the money was a ministerial act. *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *8, *17-18, *22.

¶10 We held that Signature did not have actual authority to direct the Clerk to use Ranger's money for Granite State's obligations and that "the only real issue presented is

---

[4] Ranger originally sued for return of the entire $35,000 but conceded in the first oral argument that the Clerk was not negligent in disbursing $15,000 to Signature for Ranger's own bond.

whether Signature had apparent authority for its actions." *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *13. Thus, because "[r]easonable minds could differ as to whether Signature had actual or apparent authority to freely allocate Ranger bail moneys, and all of the facts necessary to determine this issue have not been presented," we remanded for a trial on Signature's apparent authority and rejected the trial court's reliance on Signature's own representations of authority.[5] *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *10. We directed the trial court to consider Ranger's objective manifestations regarding Signature's authority, as "apparent authority may not be inferred from the acts of an agent." *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *13.

¶11 We pointed out that Ranger's objective manifestations of Signature's authority were "contained in the bail bonds and the related powers of attorney filed with the court." *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *14. These documents informed the Clerk that Signature could act as Ranger's agent for Rogers' cases 97-1-05295-7 and 98-1-03952-5 and that Signature could not use its powers in combination with any other surety companies' powers. *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *14.

¶12 The Clerk's reliance on a subjective belief that Signature could direct Ranger's funds contrary to Ranger's written directions posed questions of material fact about whether (1) that belief was reasonable and (2) a clerk of ordinary prudence would make further inquiry about Signature's ability to direct Ranger's funds in light of the filed powers of attorney, the posted bail bond, and entry of "cash bail" on a preexisting bond that had not been forfeited. *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *15.

¶13 On remand, without addressing the issue of apparent authority or any other legal or factual issues, the County moved for summary judgment based on a declara-

---

[5] Whether apparent authority exists is a question of fact. *Costco Wholesale Corp. v. World Wide Licensing Corp.*, 78 Wn. App. 637, 646, 898 P.2d 347 (1995).

tion from Joel McAllister, a manager of Finance and Information Services for the King County Department of Judicial Administration.[6] McAllister's declaration incorporates the County's summary judgment argument and states that the applicable standard of care for clerks in Washington State is to disburse funds to any recognizable bonding agent without checking the particular file or bond. The declaration also states that, even on notice of irregularity, the usual response is "So what?" McAllister states that it is too burdensome for a clerk to pull a file and check to ascertain the bonding company's express limitations on the agent's authority from the bond and the filed corresponding power of attorney.

¶14 The trial court granted summary judgment to the County because "Ranger [had not] been able to come up with some evidence in opposition to that." Report of Proceedings at 20.

¶15 Ranger appeals.[7]

## ANALYSIS

¶16 Ranger's sole contention in this appeal is that the trial court erred in granting the County's summary judgment motion because the Clerk failed to follow Ranger's directives in a bail bond and its accompanying power of attorney. Ranger asserts that McAllister's declaration does not resolve the issues of material fact because a court clerk is required to follow such directives. We agree that the essential issue of material fact we identified in the first appeal still must be resolved.

¶17 In reviewing a grant of summary judgment, "we must engage in the same inquiry as the trial court." *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030

[6] According to McAllister, his office is equivalent to superior court clerk's offices in other counties.

[7] The clerk's papers and Ranger's appellate brief include the State of Washington as a defendant. Ranger conceded at trial that the State of Washington should be dismissed from this case and raises no argument regarding this issue on appeal.

(1982). A summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990).

¶18 We "consider the evidence and the reasonable inferences therefrom in a light most favorable to the nonmoving party." *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). "The issues of negligence and proximate cause are generally not susceptible to summary judgment." *Ruff v. County of King*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995). A nonmoving party, however, "may not rely on speculation, argumentative assertions that unresolved factual issues remain." *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

¶19 After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue of material fact. *Meyer v. Univ. of Wash.*, 105 Wn.2d 847, 852, 719 P.2d 98 (1986). Where reasonable minds could reach but one conclusion from the admissible facts in evidence, summary judgment should be granted. *LaMon v. Butler*, 112 Wn.2d 193, 199, 770 P.2d 1027 (1989).

¶20 Here, the County submitted McAllister's declaration attempting to explain "the proper procedures for court clerks in receiving bail moneys." *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *17. According to McAllister's declaration: (1) it was not an error for the Clerk to make an entry stating that Ranger's bail bond money for cause no. 98-1--03952-5 was "cash bail" because the phrase "cash bail" is a default transaction code to use "whenever funds are tendered in a criminal case in which the clerk has not yet received an order specifying what to do with such funds," CP at 74; (2) "the [C]lerk clearly handled the receipt of the $20,000 which is involved here properly and in a manner

fully consistent with the standard of care in clerk's offices in this state," CP at 76; and (3) "[i]n complying with the direct order of the Court . . . the [C]lerk was of course acting consistent with the standard of care existing in clerk's offices in this state." CP at 77. McAllister also stated,

> [T]he $15,000 bond in the Rogers case was Ranger's; the other three were Granite State's. The clerk's office would not have known that, however, without pulling the court files and reviewing the bond documents themselves. Even if for some reason a clerk noticed that there were two different sureties involved, I would expect the clerk's reaction to be, in effect, "So what"? These bond companies are justified by the Superior Court through an established process designed to show that the company is qualified to conduct business in this field. Clerk's offices are not expected to challenge agents of companies that are expressly authorized by the Superior Court to operate. This would be especially true, as here, where the company (Signature) is authorized by the Court to issue bonds for both the sureties involved, Ranger and Granite State. . . . Aside from that, the clerk would not be aware of the relationship if any between the two sureties. Insurance companies buy and sell each other, and pieces of each other, from time to time. They can also have agreements between themselves governing various aspects of their businesses. In short, it would be extremely difficult for a clerk's office to question, in any timely and meaningful fashion, the direction of a bond agent to allocate funds of one surety to the obligations of another. Neither my office nor any other clerk's office in the state, to my knowledge, has ever engaged in such a review of the bona fides of bail bond agents. If clerks are required to second-guess the relationship between insurance companies and the authority of bond agents, this would increase our work load, our service lines would be longer than they are, and we would likely have to build in a buffer to give us time for such reviews. If my office were to undertake such reviews, I would expect our ability to handle matters such as exoneration of bail and prisoner releases on bail to be materially affected. . . . Certainly, the standard of care which currently exists in clerk's offices in this state does not call for such reviews.

CP at 76-77. In sum, McAllister claims that the Clerk's actions "in connection with the Ranger check and the 1997

and 1998 Rogers and 2000 Sims cases were fully consistent with the standard of care concerning receipt, allocation, and disbursement of funds as those exist in clerk's offices today and in 2000." CP at 77-78. The County's sole evidence, McAllister's declaration, suggests that for any given bond transaction, a clerk has no independent responsibility to bonding companies to determine a bonding agent's authority and to properly record and disburse funds, despite the bonding companies' written and filed directives relating to that particular bond.

¶21 Despite our holding in the first appeal that Signature had no actual authority and that a genuine issue of material fact existed about whether it had apparent authority, the County's evidence assumes a different scenario—that Signature had actual or apparent authority. McAllister asserts that clerks are not required "to challenge agents of companies that are expressly authorized by the Superior Court to operate." CP at 76. McAllister implies that Signature had authority because "[t]hese bond companies are justified by the Superior Court through an established process designed to show that the company is qualified to conduct business in this field." CP at 76. But merely because a superior court authorizes a bonding agent, it does not follow that the agent has actual or apparent authority to substitute money from one bonding company for another bonding company's obligations.

¶22 We held that Signature lacked "actual authority to direct the [C]lerk to use Ranger's check to cover Granite State's financial obligations" for the following reasons: (1) "[W]hile the agreement between Signature and Ranger granted Signature actual authority over 'all . . . matters of bond administration,' clearly this grant of authority only extended to the administration of *Ranger* bond matters"; (2) "[t]he agreement did not give Signature authority to allocate Ranger bail moneys to pay for Granite State's forfeiture costs"; and (3) "Signature's authority in allocating bail moneys did not extend to cases where bail had not been forfeited." *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at

*12-13 (third alteration in original) (citations omitted) (quoting CP at 86).

¶23 At the conclusion of the first appeal, the remaining issue was "whether Signature had apparent authority for its actions." *Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at *13. " 'Whether an agent has apparent authority to make a contract depends upon the circumstances and is to be decided by the trier of fact.' " *State v. French*, 88 Wn. App. 586, 595, 945 P.2d 752 (1997) (internal quotation marks omitted) (quoting *Costco Wholesale Corp.*, 78 Wn. App. at 646). The party asserting apparent authority has the burden of proof. *French*, 88 Wn. App. at 595. Whether an agent has apparent authority to bind a principal depends on the objective manifestations the principal made to a third party. *French*, 88 Wn. App. at 595. "[The principal's] objective manifestations of [the agent's] authority [a]re contained in the bail bond and related power of attorney." *French*, 88 Wn. App. at 596.

¶24 In determining whether the principal's objective manifestations will support a finding of apparent authority, we consider whether the principal's conduct would lead a reasonable person to believe that the agent had authority to act as well as whether the one claiming apparent authority actually believed that the agent had authority to act for the principal. *King v. Riveland*, 125 Wn.2d 500, 507, 886 P.2d 160 (1994). Apparent authority cannot be based on the agent's actions. *French*, 88 Wn. App. at 595. "While apparent authority can be inferred from the principal's actions, 'there must be evidence the principal had knowledge of the act which was being committed by its agent.' " *French*, 88 Wn. App. at 595 (internal quotation marks omitted) (quoting *State v. Parada*, 75 Wn. App. 224, 231, 877 P.2d 231 (1994)).

¶25 Thus, in the first appeal, we reviewed the bail bonds and related powers of attorney and held:

[A] genuine issue of material fact exists as to whether the [C]lerk reasonably believed that [Signature] had apparent

authority, and all of the facts necessary to determine this issue have not been presented to this court. First, there were facts that may have led a person of ordinary prudence to make further inquiry regarding [Signature's] authority to bind Ranger. As noted, the [C]lerk's office had previously received the Ranger bonds posted for Rogers and the accompanying powers of attorney, indicating which bonds Ranger was insuring. In addition, the check Ranger submitted referenced the 1998 Rogers case, cause no. 98-1-03952-5; it did not refer to either the 1997 Rogers case or any cases involving Sims. Thus, the trial court erred in granting summary judgment on the issue of apparent authority.

*Ranger Ins.*, 2004 Wash. App. LEXIS 1894, at \*15 (footnote omitted).

¶26 Here, McAllister's declaration endorses the Clerk's actions based solely on Signature's own representations of apparent authority.

¶27 Nothing in the record on appeal shows Ranger's objective manifestations supporting Signature's apparent authority. Nor is there any evidence that Ranger knew of Signature's fraudulent actions. *See French*, 88 Wn. App. at 595. Indeed, the bail bond and related powers of attorney strongly indicate that Ranger did not have knowledge of Signature's actions and that Signature lacked the authority to use Ranger's money for another bonding company's obligations.

¶28 Thus, on this record, the County failed to address its burden of establishing Signature's apparent authority. Accordingly, Ranger, the nonmoving party, need not have set forth specific facts to rebut the County's erroneous assumptions and contentions and disclosed the existence of a genuine issue of material fact on an issue that we had already decided in the first appeal. *See Meyer*, 105 Wn.2d at 852.

¶29 The trial court erred in granting summary judgment to the County when unresolved material issues of fact remain. We remand again for determination of, in addition to any other remaining issues for the trier of fact, whether

Signature had apparent authority to direct Ranger's money to pay Granite State's obligations. *See French*, 88 Wn. App. at 595.

¶30 We reverse and remand for trial.

PENOYAR, J., and CASEY, J. PRO TEM., concur.

Review granted at 163 Wn.2d 1005 (2008).