[Nos. 4862–4–III; 4863–2–III.   Division Three.   May 31, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. MARCUS K. RANSOM, *Defendant,* ELZADIE RANSOM, ET AL, *Appellants.*

ELZADIE RANSOM, ET AL, *Appellants,* v. THE STATE OF WASHINGTON, *Respondent.*

*William C. Maxey,* for appellants.

*Donald C. Brockett, Prosecuting Attorney,* and *Al Gauper, Deputy,* for respondent.

McINTURFF, J.—Elzadie and Charles Ransom appeal the forfeiture of a bail bond. We reverse.

On August 8, 1980, Marcus Ransom appeared before the Honorable John J. Ripple for (1) arraignment on a first degree robbery charge, and (2) a probation detainer arising from a 1979 conviction. Judge Ripple signed an order providing "the detainer is dropped in the event that the defendant posts a $10,000 cash bond or $20,000 surety bond in the now pending first degree robbery (accomplice)." The probation detainer was released conditioned upon Mr. Ransom's compliance with the bond conditions.

On August 29, 1980, a $10,000 cash bond was posted in Spokane County Superior Court under the robbery cause number. It is undisputed that one–half of the money was supplied by Elzadie Ransom, the defendant's mother, from a back social security award, and the balance was provided by the defendant's brother, Charles Ransom, from a personal injury settlement. Mr. Ransom was released from custody.

Mr. Ransom appeared for trial on the robbery charge and was found guilty by a jury on January 12, 1981. He remained free pending sentencing on May 29, 1981. The Honorable Philip J. Thompson sentenced Mr. Ransom to a term of not more than 10 years and signed the judgment, sentence, and warrant of commitment. Then, the following exchange occurred:

THE DEFENDANT: Your Honor, could I be allowed time to even call my parents; not from within the penitentiary,

like from [the deputy prosecutor's] office or [defense counsel's] office?

THE COURT: If there is some way to work that out, it's all right with me, but *at this point you are in the custody of the State* and you will have to work it out.

[DEFENSE COUNSEL]: Your Honor, there's not a deputy here, I might point out to the court, that I'm aware of.

THE COURT: All right.

[DEFENSE COUNSEL]: I don't really—I never envy the responsibility of walking a person over to the jail or anything like this, especially in circumstances like this. I don't know what to do in a case like this, Your Honor.

. . .

[DEPUTY PROSECUTOR]: We have phoned for a deputy, Your Honor.

THE COURT: All right.

[DEFENSE COUNSEL]: I would just ask, in the presence of the deputy, there's no way to get out of my office, if he can stop at my office?

THE COURT: Okay. Fine. That is fine if there is some way to work it out that Mr. Ransom can make phone calls, confer with his girlfriend.

Mr. Ransom was fingerprinted, but fled the courtroom prior to the arrival of the deputy sheriff; he remains at large.

On July 14, 1981, Judge Thompson signed an order which revoked the $10,000 cash bond posted for the robbery charge. On July 29, 1981, Judge Ripple signed an order revoking the cash bond which referred to the probation detainer.

On September 28, 1981, Elzadie and Charles Ransom petitioned Judge Thompson to vacate the order of forfeiture. Judge Thompson stated:

The court is of the opinion that a bond that is posted to ensure the presence of a defendant is not exonerated until such time as the defendant is actually reduced to custody: that once he's reduced to custody, is actually in the physical control of a representative of the State or the deputy sheriff, as in this case, that at that time the bond is automatically exonerated. Up until that time, the reason the deputy is not there and the reason why a person is free to move about, to come into court off the

street on their [sic] own is because the court is relying on their [sic] not running based on the fact that a bond is posted and it will be forfeited if they [sic] run. Until such time as Mr. Ransom actually was in the physical custody of a deputy sheriff, I feel the cash bond was in effect, and at no time was Mr. Ransom's bond, as it has been indicated having been posted by his parents, at no time was it exonerated, so that the court did not have jurisdiction to revoke it.

Nonetheless, Judge Thompson rescinded his revocation order for 30 days to allow Mr. Ransom to surrender himself to the custody of the county sheriff. Upon the completion of this 30–day period, Mr. Ransom's appearance bond was forfeited.

On October 20, 1981, Elzadie and Charles Ransom moved Judge Ripple to vacate his order of forfeiture. In denying the motion he said:

there isn't any question in my mind that the only reason I signed the order releasing the detainer was that it was secured by a bond. As far as I'm concerned the bond acted in both matters and as far as I'm concerned from what I know about it, he did not return to custody on the detainer.

The dispositive issue is whether the $10,000 appearance bond was exonerated at the time Mr. Ransom fled the courtroom. We hold it was.

The object of bail is to insure the appearance of the accused before the court at such times as the court may direct. It is not a revenue measure in lieu of fine, or one to punish sureties. *State v. Heslin,* 63 Wn.2d 957, 960, 389 P.2d 892 (1964); *State v. O'Day,* 36 Wn.2d 146, 159, 216 P.2d 732 (1950); *State v. Jackschitz,* 76 Wash. 253, 255, 136 P. 132 (1913).

A bail bond is discharged when the principal is found guilty, sentenced, and committed. *State v. Akers,* 156 Wash. 353, 355, 286 P. 846 (1930); *State v. Caruso,* 137 Wash. 519, 524, 243 P. 14 (1926).

In *State v. Akers, supra,* the defendant furnished an appearance bail bond and entered a guilty plea. On June 1,

1928, the plea was accepted and the trial court sentenced him to pay a $500 fine and to serve 90 days in the county jail to commence on November 1, 1928. The order provided: "'the defendant O. O. Akers is hereby remanded to the custody of the sheriff of said county to be by him detained in the county jail of Yakima County . . .'" *Akers,* at 355. Despite the language of the commitment order, the sheriff "did not take actual custody of him in the sense of actually restraining him of his liberty." *Akers,* at 355–56. Mr. Akers did not appear on November 1, 1928, and the sheriff was unable to find him. Our Supreme Court, in holding that the bond was discharged and the sureties exonerated, stated:

> We are of the opinion that, when Akers personally appeared in court and pleaded guilty and the court then rendered its final judgment against him upon that plea, he then "rendered himself in execution of the judgment." He was then personally present in court, as he was required to be to enable the court to render final judgment against him, Rem. Comp. Stat., §2196, and was then by the express terms of the judgment "remanded to the custody of the sheriff." Thus he was taken out of the constructive custody of respondents, his sureties, and placed either in the actual physical custody of the sheriff, or in the constructive custody of the sheriff if the judgment be viewed as in legal effect embodying a suspension of his sentence until November 1, 1928.

*Akers,* at 357.

The purpose for requiring Mr. Ransom to post a $10,000 bond was to assure his appearance before the court. That purpose was satisfied. Mr. Ransom appeared for trial and was found guilty. He appeared for sentencing and received a term of not more than 20 years. He was fingerprinted. He requested permission to arrange his personal affairs. This request was denied and he was told "at this point you are in the custody of the State." An order of commitment was signed. The three requirements of *State v. Caruso, supra,* and *State v. Akers, supra,* have been satisfied. It is unfortunate prior arrangements had not been made to have a deputy sheriff in the courtroom to take actual custody of

Mr. Ransom. However, this oversight does not affect the exoneration of the appearance bond. The trial court erred in refusing to vacate the forfeiture order.

In the alternative, the State contends the $10,000 cash bond served a dual purpose, securing the appearance of Mr. Ransom for the first degree robbery charge *and* any subsequent probation violation hearings. We do not agree.

The order releasing the probation detainer provides the detainer would be released upon Mr. Ransom posting a $10,000 cash bond in the first degree robbery charge. There is nothing on the face of that order stating the bond is applicable to the probation detainer action. We concede Judge Ripple's intention was to condition the release of the probation detainer with the posting of the bond. But that intent was not expressed in the order releasing detainer and we decline the State's invitation to retroactively infer such a condition. If the State desires to have a bond serve a dual purpose, such purpose should be expressed on the record.

Next, the State asserts Elzadie and Charles Ransom have not proven a real interest in this action. This argument is without merit. In his October 15, 1981 order, Judge Thompson specifically found Elzadie and Charles Ransom provided the monies for the bond. This finding is unchallenged and is accepted as a verity on appeal. *State v. Christian*, 95 Wn.2d 655, 656, 628 P.2d 806 (1981). The petitioners' allegation as to ownership of the funds deposited is sufficient to give them standing to challenge the Superior Court's decision on the forfeiture. *See* RAP 3.1; *Sheets v. Benevolent & Protective Order of Keglers*, 34 Wn.2d 851, 210 P.2d 690 (1949); *State v. Casey*, 7 Wn. App. 923, 503 P.2d 1123 (1972).

Finally, the State asserts the petitioners have not timely commenced their appeal. This contention is also without merit. Judge Thompson signed the order on bond forfeiture on October 15, 1981. Judge Ripple signed an order denying petitioners' motion to vacate and/or set aside order revoking cash bond on November 4, 1981. Both are final orders made after judgment which affect a substantial right. *See*

RAP 2.2(13). The petitioners timely filed their notice of appeal on November 10, 1981, within 30 days of the filing of both orders. *See* RAP 5.2(a).

The judgment of the Superior Court is reversed; the Spokane County Clerk's Office is ordered to release the $10,000 to Elzadie and Charles Ransom.

ROE, C.J., and MUNSON, J., concur.

Reconsideration denied June 24, 1983.