[No. 20340-5-II.    Division Two.    October 24, 1997.]

The State of Washington, *Respondent*, v. James Robert French, *Defendant*, Amwest Surety Insurance Company, *Appellant*.

*Daniel L. Stahnke* of *Law Office of Donald L. English*, for appellant.

*Arthur D. Curtis, Prosecuting Attorney*, and *Scott S. Anders, Deputy*, for respondent.

SEINFELD, J. — Amwest Surety Insurance Company appeals the forfeiture of a $75,000 appearance bond it executed on behalf of defendant James Robert French. Amwest contends that by operation of RCW 10.64.025, the bond was exonerated upon French's conviction and that French, who also was the owner of the bail bond company posting the bond, lacked the authority to bind Amwest to a new bond. Amwest further contends that it had the right to file an affidavit of prejudice as a new party to the action. We agree that the bail bond was exonerated at the time of French's conviction. Because French did not file a new bond, Amwest had no further obligation to ensure his appearance. Thus, we reverse.

## FACTS

The State charged French with one count of child molestation in the first degree, two counts of rape of a child in the first degree, and three counts of rape of a child in the second degree. The arraignment court conditioned his release upon the posting of an appearance bail bond in the amount of $75,000. Clark County Bail Bonds, a company owned by French, posted the bond and Amwest secured it.

A jury found French guilty of all charges and on November 13, 1995, the trial court entered the jury's verdict. The court then considered conditions of release pending sentencing. Part of the ensuing court-counsel colloquy focused on RCW 10.64.025(1), which provides:

> A defendant who has been found guilty of a felony and is awaiting sentencing shall be detained unless the court finds by clear and convincing evidence that the defendant is not likely to flee or to pose a danger to the safety of any other person or the community if released. Any bail bond that was posted on behalf of a defendant shall, upon the defendant's conviction, be exonerated.

Noting that French was facing "substantial time in jail" and loss of employment, the court seemed concerned that French might be a flight risk. The court then stated:

> Mr. French, this is what we're going to need to do. I'm going to revoke your release tonight. I'll be setting — I'll set a bail, but I will not allow you to bail out on your own company again, like you have before. I've felt uncomfortable with that all along, and just — it seemed odd to me that a person would be their own bailbondsman, because we'd look to the bailbondsman to bring the person back if they jump.
>
> I recognize that there's a surety behind you.

The court decided to leave the bail amount at $75,000 but asked that bail be "posted by another bondsman, someone unaffiliated with you; in fact, a different surety would probably be the best way to handle that."

French then asked the court to keep the bond in place, contending that he was still the attorney in fact for the surety. In the alternative, he argued that he had other real property to secure a bond. Following this colloquy, the court commented,

> 1:30 tomorrow we'll review the issue of release.
>
> Counsel, are you available then, either one of you? I would like you to come in and give me a presentation on security relating to Mr. French's home.

. . . .

. . . And, like I said, I just — I recognize there's a surety behind you, but like I said, we usually call up the bondsman and say, "Joe Blow didn't appear, and we want you to bring him in." That obviously wouldn't work in your case.

Our record of that hearing concludes with the trial court modifying some of the conditions of release. French was not taken into custody.

French failed to appear at the hearing that apparently was rescheduled for November 16, 1995; the court then issued a bench warrant for his arrest. On November 21, the State moved for an order forfeiting the appearance bond and on November 30, Amwest filed its notice of appearance, its response to the State's motion, a motion for exoneration of the bond, and an affidavit of prejudice.

On December 1, the trial court denied Amwest's motion and affidavit of prejudice by oral order, indicating that the motion was untimely. Two weeks later, Amwest filed a motion and affidavit of actual prejudice, asserting that a determination of the pending motions would require deciding whether French had apparent authority to bind Amwest to a new or continuing bail bond. Amwest argued that the trial judge's testimony would be necessary to determine French's apparent authority and that under ER 605, the trial judge could not testify as a witness unless he recused himself.

At a hearing on December 28, the trial judge listened to a tape of the November 13 postverdict proceedings. He then interpreted his oral ruling as follows:

THE COURT: Well, I disagree with you there, for the simple reason that in watching the tape, I told Mr. French that he was going into custody, that I was going to revoke his bond and set a new bond of $75,000, and then he prevailed upon me under the representation that his bond was still good, and I changed my decision.

. . . .

. . . I had no recollection of setting a new bond of $75,000,

and now I know why I didn't, because I changed my mind and allowed him to stay out on the existing bond after he represented that it was still good, after he'd prevailed upon me the fact — to the effect that, "None of the other bondsmen will bail me out; they're all my competitors."

And he asked that he be allowed to post a bond, and I said, "We'll decide the issue tomorrow."

The trial judge concluded that his testimony would not be helpful; thus, he declined to recuse himself and, instead, proceeded to rule on the substantive motions. The court concluded that during the postverdict proceedings, French was acting as Amwest's general agent and bound Amwest to a continuation of the appearance bond. The court then entered an order forfeiting the $75,000 bond.

## DISCUSSION

### I

*Automatic Exoneration of Bail Bond Upon Conviction*

■ The terms of the bail bond affect the liability of the surety. *State v. Lewis*, 35 Wash. 261, 269, 77 P. 198 (1904). Before 1989, a bail bond was not eligible for discharge until the court executed a written final judgment, sentence, and commitment order. *See e.g., State v. Hampton*, 107 Wn.2d 403, 728 P.2d 1049 (1986); *State v. Ransom*, 34 Wn. App. 819, 822, 664 P.2d 521 (1983). An oral pronouncement of judgment and sentence was not conclusive or final. *State v. Dailey*, 93 Wn.2d 454, 458-59, 610 P.2d 357 (1980).

■ But in 1989, the Legislature adopted RCW 10.64.025. In contrast to earlier law, this statute focuses on the time of conviction, not on judgment. Further, it uses the mandatory "shall" in referring to exoneration at the time of conviction. The State concedes that the bond here was subject to exoneration following French's conviction. It contends, however, that the statute is not self-executing and that an appearance bond is not exonerated until the court enters an order to that effect.

■ To determine the merits of the State's argument, we turn to the statute itself. We construe a statute according to its plain language, and statutory construction is unnecessary and improper when the wording of a statute is unambiguous. *ITT Rayonier v. Dalman*, 67 Wn. App. 504, 509, 837 P.2d 647 (1992). Statutes should be given a rational and sensible construction. *State v. Thomas*, 121 Wn.2d 504, 512, 851 P.2d 673 (1993). The fundamental requirement of statutory construction is to ascertain the intent of the Legislature as expressed in the statute. *State v. Keller*, 98 Wn.2d 725, 728, 657 P.2d 1384 (1983).

■ Here, if the Legislature intended to codify prior case law or to require an order of exoneration, it would have done so. The plain language of the statute permits only one interpretation: the bond is exonerated by operation of law at the moment of conviction. The law does not require a written order to that effect.

We note that this result is consistent with the policy supporting preconviction bail and with the remaining portion of RCW 10.64.025, which requires the trial court to detain a defendant awaiting sentencing "unless the court finds by clear and convincing evidence that the defendant is not likely to flee or to pose a danger to the safety of any other person or to the community if released." The allowance of preconviction bail recognizes the presumption of innocence. *State ex rel. Wallen v. Noe*, 78 Wn.2d 484, 487, 475 P.2d 787 (1970). After conviction, the defendant is no longer the beneficiary of this presumption and the trial court, by the terms of RCW 10.64.025, must reevaluate the defendant's situation. In doing so, it may consider imposing new conditions of release related to "the whereabouts of the defendant, contact with the victim, or other conditions." RCW 10.64.027. In light of the heightened likelihood of defendant's incarceration and the new presumption of guilt, the defendant is likely to pose an increased flight risk. Consequently, the court will need to consider increasing bail as a new condition of release.

Generally, a bonding company is motivated to return a

defendant to custody because by doing so it can either avoid a forfeiture or have remitted to it the amount of the bond less costs. RCW 10.19.040, .160; *State v. Bailey*, 121 Wash. 413, 209 P.2d 847 (1922). Of course, this motivation is lacking where, as here, the defendant owns the bonding company. The trial court's comments indicated an awareness of this factor and concern about the risk of flight. The court noted that French was facing "substantial time in jail" and that it was "uncomfortable" with French's bailing himself out because there was no bondsman to return him to custody. But instead of making the findings required by RCW 10.64.025, the trial court continued the hearing to another day. When French left court on November 13, he was on personal recognizance and nothing more.

## II

### *French's Apparent Authority to "Rebind" Amwest*

The State argues, in the alternative, that if the initial bond was exonerated, French had the apparent authority and acted to rebind Amwest to the appearance bond.[1] But neither the facts nor the law support this argument.

■ First, the court stated that it had not set a new bond. Instead, it stated: "[H]e prevailed upon me under the representation that his bond was still good . . . I . . . allowed him to stay out on the existing bond after he represented that it was still good . . . ." As we discussed above, by operation of law the posted bond was exonerated by French's conviction. Thus, the court could not bind Amwest to that bond.

■ Assuming arguendo that the trial court was saying that it was allowing French to post a new bond on the same conditions and without paying an additional premium, we conclude that French lacked the authority to

---

[1]Because Amwest has not challenged the court's finding that French was a general agent, rather than a special agent, we do not discuss that issue.

bind Amwest to these terms. First, the power of attorney French provided stated on its face, "can only be used once." French used it on the first bond and did not present a new power of attorney to secure his postconviction release. Thus, he failed to demonstrate actual authority to bind Amwest.

We next consider whether the State could rely only upon French's apparent authority to bind his principal. " 'Whether an agent has apparent authority to make a contract depends upon the circumstances and is to be decided by the trier of fact.' " *Costco Wholesale Corp. v. World Wide Licensing Corp.*, 78 Wn. App. 637, 646, 898 P.2d 347 (1995) (quoting *Barnes v. Treece*, 15 Wn. App. 437, 443, 549 P.2d 1152 (1976)). The burden of establishing apparent authority rests on the one asserting its existence. *Costco,* 78 Wn. App. at 646 (citing *Schoonover v. Carpet World, Inc.*, 91 Wn.2d 173, 178, 588 P.2d 729 (1978)). We review the trial court's factual determinations using a substantial evidence standard, viewing the evidence and the reasonable inferences therefrom in the light most favorable to the prevailing party below. *Colonial Imports, Inc. v. Carlton N.W., Inc.*, 121 Wn.2d 726, 730 n.1, 853 P.2d 913 (1993); *Smith v. Hansen, Hansen & Johnson, Inc.*, 63 Wn. App. 355, 363, 818 P.2d 1127 (1991).

An agent's apparent authority to bind a principal depends upon the objective manifestations of the principal to a third person. *King v. Riveland*, 125 Wn.2d 500, 507, 886 P.2d 160 (1994). Apparent authority cannot be inferred from the acts of the agent. *Mauch v. Kissling,* 56 Wn. App. 312, 783 P.2d 601 (1989) (citing *Lamb v. General Assocs., Inc.*, 60 Wn.2d 623, 374 P.2d 677 (1962)). While apparent authority can be inferred from the principal's actions, " 'there must be evidence the principal had knowledge of the act which was being committed by its agent.' " *State v. Parada*, 75 Wn. App. 224, 231, 877 P.2d 231 (1994) (quoting *Mauch,* 56 Wn. App. at 316).

The principal's manifestations will support a finding of apparent authority only if (1) there is evidence that the

one claiming apparent authority actually believed that the agent had authority to act for the principal, *King*, 125 Wn.2d at 507 (citing *Smith*, 63 Wn. App. at 363), and (2)

> the principal's conduct would lead a reasonable person to believe that the agent had authority to act. Reliance on the agent's authority must be justifiable. One dealing with an agent is not entitled to rely on the agent's representations when put on notice that a question exists as to the agent's authority.

*Amtruck Factors, a Div. of Truck Sales, Inc. v. International Forest Prods.*, 59 Wn. App. 8, 19, 795 P.2d 742 (1990) (citations omitted).

In deciding whether one dealing with an agent should question an agent's authority, we consider whether

> a person exercising ordinary prudence, acting in good faith and conversant with business practices and customs, would be misled thereby, and such person has given due regard to such other circumstances as would cause a person of ordinary prudence to make further inquiry.

*Taylor v. Smith*, 13 Wn. App. 171, 177, 534 P.2d 39 (1975) (quoting *Lamb*, 60 Wn.2d at 627); *see also Amtruck Factors*, 59 Wn. App. at 19.

Thus, we must first consider the objective manifestations that Amwest, the principal, made to the court regarding its authority. The court cannot infer apparent authority from French's own conduct. *Mauch*, 56 Wn. App. at 316. Consequently, the court cannot rely upon his post-verdict suggestions that he had the authority to bind Amwest to a continuing bail bond.

Amwest's objective manifestations of French's authority were contained in the bail bond and related power of attorney. The State asks us also to consider the following additional facts: (1) "it is well recognized that James French had been a bonding agent for Amwest for a considerable period of time"; (2) Amwest "allowed" French to post his own bond; (3) Amwest was "on notice" that

French was facing serious charges; and (4) Amwest did not limit French's authority to post bonds during the interval "from his first appearance through his flight from the jurisdiction."

But there were additional facts and circumstances that would put a person of ordinary prudence on notice to make further inquiry regarding French's authority to bind Amwest. *Lamb*, 60 Wn.2d at 627. The relevant circumstances were that:

(1) French had been convicted of several serious felonies and was facing substantial time in prison;

(2) Incarceration would result in a termination of French's employment;

(3) French faced the possibility of having his license as a bondsman revoked because of his convictions, RCW 18.185.110;

(4) The power of attorney stated on its face "can only be used once";

(5) RCW 10.64.025 indicates that a bond is exonerated upon conviction.

If French had been asserting his authority to serve as Amwest's agent in a transaction with a third party, but all the other circumstances remained the same, a prudent person might not have been on inquiry notice. But when French's self-dealing is added to the facts that this was a postconviction bond and that French was facing lengthy incarceration, we must conclude that a person of ordinary prudence would make further inquiries before deciding that French had the authority to bind Amwest on a new bond without even paying an additional premium.

The State's reliance on *Parada*, 75 Wn. App. 224 is misplaced. In *Parada,* the surety posted an appearance bond through its agent, a bail bond company. 75 Wn. App. at 226. The bond contained the statement "SEND ALL COURT NOTICES TO:" followed by the bailor's name and address. *Parada*, 75 Wn. App. at 226. The surety had exe-

cuted an individually numbered power of attorney appointing the bailor as its attorney in fact. *Parada*, 75 Wn. App. at 227. When the bailee failed to appear, the prosecuting attorney sent a notice of intent to forfeit the bond to the surety in care of the bailor. The bailor immediately notified the surety by telephone that the bailee had failed to appear and forwarded to the surety all subsequent notices. *Parada*, 75 Wn. App. 227.

After the court forfeited the bond, the surety appeared and moved to exonerate the bond, arguing that it was never notified by the court, in writing, of the bailee's failure to appear. The court denied the motion and the *Parada* court affirmed, concluding that notices were properly sent to the bailor as the surety's apparent agent. 75 Wn. App. at 232.

*Parada* is factually distinguishable. In *Parada*, there was no reason to question the bailor's authority to receive notice for the surety, the surety received actual notice of the bond forfeiture, and the bailor had not posted bail on his own behalf. Here, there was reason to question French's authority; no one at Amwest knew that French was seeking to rebind it on the original bond; and French, a flight risk, was promising his own appearance.

### III

*Necessity of Findings Pursuant to RCW 10.64.025*

Relying upon RCW 10.64.025,[2] Amwest contends that the trial court erred in releasing French without first finding by clear and convincing evidence that he was not likely to flee or pose a danger to others. It contends that when the court released French without making these findings, it expanded Amwest's obligations and, thereby, discharged Amwest from further liability.

Any material change in a surety's obligation without

---

[2]The current version of RCW 10.64.025 *requires* sexual offenders to be detained pending sentencing.

the surety's consent will discharge the surety's obligation. *Spokane Union Stockyards Co. v. Maryland Cas. Co.*, 105 Wash. 306, 308, 178 P. 3 (1919). By implication, if a surety consents to an expansion of its obligation, the surety will be liable to the extent of its consent. Therefore, French's release expanded Amwest's obligation only if French had the apparent authority to agree to the expansion on Amwest's behalf. Because we have decided that French lacked this authority, we do not decide whether the court's decision to release French was supported by sufficient evidence that French did not pose a risk of flight or of harm to others.

IV

*The Affidavit of Prejudice*

Although our ruling on the bond appears to dispose of this case, we consider Amwest's challenge to the refusal of the trial judge to recognize its affidavit of prejudice because there may be some further matters to decide upon remand for entry of an order of exoneration. A party may, as a matter of right, change judges upon the timely filing of a motion and affidavit of prejudice against a judge about to hear his cause on the merits. RCW 4.12.040, .050; *State v. Dixon*, 74 Wn.2d 700, 702, 446 P.2d 329 (1968). This right also belongs to new parties brought into an ongoing litigation. *Public Util. Dist. No. 1 v. Walbrook Ins. Co.*, 115 Wn.2d 339, 343, 797 P.2d 504 (1990). Following the timely filing of an affidavit of prejudice, the law deems that prejudice exists, and the judge to whom it is directed no longer has authority to act in the matter. *Harbor Enters., Inc. v. Gudjonsson*, 116 Wn.2d 283, 285, 803 P.2d 798 (1991). A motion and affidavit is timely when it is filed as soon as the moving party knows that a particular judge will be presiding and before the judge has made a ruling invoking discretionary powers. *Dixon*, 74 Wn.2d at 702.

The State contends that Amwest's affidavit was not timely because Amwest was not a new party to the proceeding. It contends that "Amwest's involvement"

began when Amwest was the surety listed on French's appearance bond. We disagree.

A surety has a unique role in a criminal case. *See In re Marriage of Bralley*, 70 Wn. App. 646, 653-54, 855 P.2d 1174 (1993). It is not a party to the action who has been served with a summons, RCW 4.28.080; its name does not appear upon the caption, CR 10(a); and until the time of the notice of forfeiture, it has not appeared in the action, *see* RCW 4.28.210. It has no right to participate in the trial of the defendant. Nor is there any basis to allow it to file an affidavit of prejudice against the trial judge at the beginning of the criminal proceedings.

But the surety has notice of the proceedings; in the recognizance bond, it recognizes that the charges against the defendant are before the court. *See Dlouhy v. Dlouhy*, 55 Wn.2d 718, 721, 349 P.2d 1073 (1960) ("The common-law rule as to what constitutes an appearance is: Any action on the party of a defendant, except to object to the jurisdiction, which recognizes the case as in court, amounts to a general appearance."). As the *Dlouhy* court states, recognition of the action is not enough. "The party's acts must have some direct purpose in the cause to constitute an appearance; the acts cannot be wholly collateral." *Dlouhy*, 55 Wn.2d at 724.

A matter that is "additional" or "auxiliary" to the primary issue is collateral. BLACK'S LAW DICTIONARY 327 (4th rev. ed. 1968). The issuance of the appearance bond on June 8, 1995, by Amwest was wholly collateral to the issue before the court in *State v. French*, the determination of whether French was guilty of the charges and, if so, the appropriate sentence. Thus, Amwest's posting of the bond did not constitute an appearance and Amwest was not a party to the action at that point in time.

Surety liability is unique in that the court may enter judgment against the surety without obtaining jurisdiction over it by service with a summons. CR 65.1. As we noted above, the surety has notice of the action. This, combined with the written notice the court must provide

to it of the "unexplained failure of the defendant to appear within thirty days of the date for appearance" and the intent to forfeit the bond, acts as the functional equivalent of service with a summons. RCW 10.19.090. When the focus of the proceedings turns from the defendant's guilt to the defendant's failure to appear in court, the surety's role is no longer collateral. Rather, it is central. As an entity against whom the court may enter judgment, the surety should have the same right of other new parties to an action to file an affidavit of prejudice.

Thus, the fact that the trial court had made discretionary rulings in the criminal case before Amwest's appearance did not negate Amwest's right to file an affidavit of prejudice before the court made discretionary rulings involving Amwest.

This is analogous to the situation where a case has gone to final judgment. In that situation there is a right to file an affidavit of prejudice against the original judge before there are any subsequent *proceedings* in the case. *See State ex rel. Foster v. Superior Court*, 95 Wash. 647, 164 P. 198 (1917); *Bedolfe v. Bedolfe*, 71 Wash. 60, 127 P. 594 (1912). This rationale has been extended to the situation where there may not be a final judgment but there is a new "proceeding of such gravity and magnitude that it should be protected by the right to exercise an affidavit of prejudice." *In re Dependency of Heibert*, 28 Wn. App. 905, 909, 627 P.2d 551 (1981).

In *Heibert*, the State had filed a petition seeking permanent deprivation of parental rights. The *Heibert* court held that the petition instituted a new and separate proceeding with "different objectives." 28 Wn. App. at 908. Thus, it allowed for the filing of an affidavit of prejudice, notwithstanding that the same judge had presided over the dependency proceedings involving the same child. 28 Wn. App. at 909-10.

Here, the December 28 hearing on the opposing motions by the State and Amwest for bond forfeiture and bond exoneration, respectively, was subsequent to the guilt

phase of the criminal case. This new proceeding had a "different objective" and there was a significant amount at stake, the $75,000 bond. Consequently, we hold that a surety may file an affidavit of prejudice against the judge who heard the criminal matter involving the defendant whose failure to appear is at issue in the bond forfeiture proceeding.

The State also argues that immediately after French's conviction, the trial judge made a discretionary decision involving Amwest. It claims that Amwest participated in the November 13 proceedings following French's conviction through its general agent, French. We do not find this argument persuasive.

■ A principal does not become a party to a criminal action when its agent has been charged with crimes related to conduct wholly outside the agency relationship. *See generally* RESTATEMENT (SECOND) OF AGENCY § 1 (1958). Here, French was in the courtroom following his conviction in his capacity as a criminal defendant, not as an agent for Amwest. Amwest did not become a party until the State filed its motion for exoneration, and once Amwest became a party, it timely filed its affidavit of prejudice before the court made any discretionary rulings.

## V

*Affidavit of Actual Prejudice under RCW 4.12.040*

■ Amwest assigns error to the trial court's denial of its motion and affidavit of actual prejudice. But, it fails to argue this issue in its brief. Therefore, we need not reach this issue. RAP 2.5(a).

Because RCW 10.64.025 requires automatic exoneration upon conviction and because French lacked the authority to bind Amwest to a new bond, we reverse the order of forfeiture and remand for further proceedings consistent with this opinion.

HOUGHTON, C.J., and HUNT, J., concur.