86 P.3d 788 (2004)
BP LAND & CATTLE LLC, a Washington limited liability company; and Burl L. Booker and Kara Booker, husband and wife, Appellants,
v.
BALCOM & MOE, INC., a Washington corporation, Respondents.
No. 21940-2-III.
Court of Appeals of Washington, Division 3, Panel Ten.
February 10, 2004.
As Amended on Denial of Reconsideration and Publication Ordered March 23, 2004.
Gary J. Libey, Nuxoll, Libey, Ensley, Esser, Colfax, WA, Timothy H. Esser, Nuxoll, Libey, Ensley, Esser, Pullman, WA, for Appellants.
Stella J. Edens, Rettig, Osborne, et al, Kennewick, WA, for Respondents.
KATO, J.
BP Land & Cattle LLC (BPLC) and Balcom & Moe, Inc., entered into a Potato Grower Agreement (Agreement). Balcom & Moe issued a check for the first batch of potatoes to BPLC member Mike Pink, who deposited it into his personal account and subsequently declared bankruptcy. BPLC sued Balcom & Moe for the money paid to Mr. Pink. The court granted summary judgment dismissal. We reverse and remand for trial.
*789 BPLC is a limited liability company organized pursuant to chapter 25.15 RCW. Burl Booker and Mike Pink are the only two members of BPLC, which engaged in general agri-business activities. Mr. Booker and his wife are guarantors for BPLC.
In 1999, BPLC, the potato grower, entered into a contract with Balcom & Moe, the marketing company. Mr. Pink, with Mr. Booker's knowledge and approval, negotiated the Agreement with Balcom & Moe and signed the Agreement on behalf of BPLC. Mr. Pink had had previous dealings with Balcom & Moe.
BPLC grew 120 acres of potatoes in 1999 and delivered them to Balcom & Moe for processing and sale.
On May 26, 2000, Balcom & Moe issued a check to Mike Pink individually and Wheatland Bank[1] in the amount of $49,201.64 for partial payment for the potatoes pursuant to the Agreement. Balcom & Moe's general manager issued the check because Mr. Pink told him he was short of cash and needed an advance on some money. When Mr. Booker learned of this payment in late spring 2000, he called Balcom & Moe and insisted that all future checks be properly issued to BPLC. Balcom & Moe apologized for the oversight and advised Mr. Booker it would correctly issue all future checks to BPLC. Balcom & Moe owed BPLC $174,801.88 for the potatoes grown pursuant to their Agreement. Balcom & Moe paid BPLC that amount less the $49,201.64 it paid Mr. Pink, who used this money for his own benefit and later filed bankruptcy.
Alleging breach of contract, BPLC sued Balcom & Moe for recovery of the $49,201.64 paid to Mr. Pink. On cross motions for summary judgment, the court dismissed BPLC's action. This appeal follows.
BPLC claims the court erred in granting summary judgment dismissal of its claim. In reviewing an order of summary judgment, we engage in the same inquiry as the trial court. Riojas v. Grant County Pub. Util. Dist., 117 Wash.App. 694, 697, 72 P.3d 1093 (2003). Summary judgment is appropriate "`if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting CR 56(c)).
BPLC claims Balcom & Moe breached their Agreement. In construing a contract, we apply certain principles: (1) the intent of the parties controls; (2) the court must ascertain the intent from reading the contract as a whole; and (3) the court will not read an ambiguity into a contract that is otherwise unambiguous. Mayer v. Pierce County Med. Bureau, Inc., 80 Wash.App. 416, 420, 909 P.2d 1323 (1995) (citing Felton v. Menan Starch Co., 66 Wash.2d 792, 797, 405 P.2d 585 (1965)). Summary judgment is appropriate if a contract is unambiguous, even if the parties dispute the legal effect of a provision. Mayer, 80 Wash.App. at 420, 909 P.2d 1323.
The Agreement states in part that "Balcom & Moe shall pay BP Land & Cattle, LLC 75 percent (75%) of the net sales price... for the period potatoes are run in equal amounts...." Clerk's Papers (CP) at 82. BPLC contends Balcom & Moe breached the Agreement by paying Mr. Pink individually. The Agreement is unambiguous. The parties intended that only BPLC be paid for the potatoes, not its individual members.
The question is whether Balcom & Moe satisfied its obligations under the Agreement when it issued the check to Mr. Pink rather than BPLC. Mr. Pink was one of two members of BPLC. Each member of a limited liability company is an agent for the entity.
[T]he act of any member for apparently carrying on in the usual way the business of the limited liability company binds the limited liability company unless the member so acting has in fact no authority to act for the limited liability company in the particular matter and the person with whom the member is dealing has knowledge *790 of the fact that the member has no such authority.
RCW 25.15.150(1)(b).
No cases interpret this statute, so we can look to cases involving general partnerships for guidance. See Kay Yew Koh v. Inno-Pacific Holdings, Ltd., 114 Wash.App. 268, 271-72, 54 P.3d 1270 (2002). Partners have the authority to receive payment of firm debts in the absence of an agreement to the contrary. Seltzer v. Chadwick, 26 Wash.2d 297, 302, 173 P.2d 991 (1946). But when such an agreement does exist, the firm debtor is not bound to it unless he had notice of it. Id.
There could be a breach of the Agreement only if Balcom & Moe had notice that Mr. Pink was not in fact authorized to accept payment in his name only.[2] Here, the Agreement was between BPLC and Balcom & Moe. Mr. Pink was not a party to the Agreement in his individual capacity. While Mr. Pink could certainly act as an agent for BPLC, there is no provision in the Agreement that he could receive payment for a debt to BPLC by way of a check made payable to him individually. The terms of the Agreement and Balcom & Moe's acknowledgement that it incorrectly issued the $49,201.64 check to Mr. Pink rather than BPLC, raises at least a question of fact whether Balcom & Moe had knowledge that Mr. Pink, in his individual capacity, could not accept payment for BPLC.
BPLC further argues that Balcom & Moe could not reasonably rely on Mr. Pink's authority to accept payment. The party claiming an agent had authority to act must actually believe such authority existed. State v. French, 88 Wash.App. 586, 596, 945 P.2d 752 (1997). BPLC argues that three facts indicate Balcom & Moe did not believe Mr. Pink had authority to accept payment: (1) the Agreement required payment to be made to BPLC; (2) Balcom & Moe knew Mr. Pink had a "partner"; and (3) it is not a customary business practice to make payment to a limited liability company member because he is in need of cash. These facts suggest Balcom & Moe knew Mr. Pink lacked the authority to accept payment in his individual capacity. Indeed, Balcom & Moe admitted that issuing a check to Mr. Pink individually was a mistake. Questions of fact exist necessitating trial for their resolution.[3]
BPLC requests an award of attorney fees on appeal. Although it has been successful here, an award of fees to a prevailing party under the Agreement must abide the results of trial.
Reversed and remanded.
WE CONCUR: BROWN, C.J., and KURTZ, J.
NOTES
[1] The bank is not involved in this appeal. It was named as a payee on the check because of its notice of security interest sent to Balcom & Moe. Clerk's Papers (CP) at 59. The money was apparently deposited into Mr. Pink's personal account at Wheatland Bank. CP at 14.
[2] BPLC's Agreement restricts its members from obtaining funds in their individual capacities without all members' unanimous consent that are otherwise payable to BPLC. CP at 15. Mr. Booker did not consent. Id.
[3] Balcom & Moe claim that its issuance of the check was not the proximate cause of BPLC's damages. But this is an argument for a tort claim. Because this is a breach of contract action and not one sounding in tort, we need not address this argument.