

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DEBORAH RODRIGUEZ, )
individually, )
         )
              Appellant, )
         )
              v. )
         )
AMERICA ONE FINANCE, INC., a )
Washington State Corporation; ALEA )
NORTH AMERICA SPECIALTY )
INSURANCE COMPANY, BOND )
#SUR168122, a Delaware Corporation; )
STEWART CAMPBELL and JANE DOE )
CAMPBELL, husband and wife and the )
marital community composed thereof; )
CHICAGO TITLE COMPANY OF )
WASHINGTON, a Washington State )
Corporation; CLAIRE M. BLODGETTE )
and JOHN DOE BLODGETTE, )
husband and wife and the marital )
community composed thereof, )
         )
              Respondents. )
         )

DIVISION ONE

No. 65945-6-I

UNPUBLISHED OPINION

FILED: July 29, 2013

DWYER, J.—Deborah Rodriguez alleged that Stewart Campbell, an independent contractor for America One Finance, violated the Mortgage Broker Practices Act, chapter 19.146 RCW (MBPA), by defrauding her of the equity in her home. In its motion for summary judgment, America One claimed that Campbell had not acted within the scope of his independent contractor agreement, but did not dispute that there were factual issues as to whether it had

assumed responsibility for Campbell's actions under the provisions of the MBPA. Because America One failed to satisfy its initial burden of demonstrating the absence of genuine factual issues, the trial court erred in dismissing Rodriguez's claims against America One on summary judgment. We therefore reverse and remand for further proceedings.

I

In 2005, Rodriguez fell behind on the mortgage payments for her Seattle home. Hoping to refinance her loan at a favorable interest rate, Rodriguez contacted Stewart Campbell, a member of her church. Rodriguez believed that Campbell was in the "mortgage business" and had helped other church members refinance their homes. At the time, Campbell was an independent loan representative for America One, Inc., a licensed mortgage broker.

At Campbell's request, Rodriguez filled out a loan application. After reviewing the application, Campbell told her that he was unable to obtain a loan because of her poor credit score. He advised her, however, that

> he had a system whereby I could transfer my home to a third party, and that in this transaction I would receive enough money from the equity in my home to pay some past debts, make some home improvements and pay the mortgage payments for six months.

As part of the plan, Campbell arranged a loan for Claire Blodgette to purchase Rodriguez's home. According to Campbell, Blodgette "would use her credit" and hold the property "in trust" for Rodriguez's benefit. Meanwhile,

Rodriguez would continue to live in the home for six months and make the monthly payments. At the end of six months, Campbell promised, "the property would be transferred back to me by Blodgette, and I would proceed to obtain a refinance loan at a lower interest rate." The sale closed on July 19, 2005.

Based on Campbell's representations, Rodriguez believed that the sale price of $248,000 would provide her with proceeds of about $30,000. Contrary to Campbell's promises, Rodriguez claims that she lost all equity in her home as a result of the transaction, apparently as a result of unanticipated fees and costs. At closing, Blodgette received $5,000 "for the use of her credit." Rodriguez also executed a promissory note for $21,000 in favor of SDCORP1, LLC, Campbell's independent business.

All of the details of the transaction were disclosed in the documents that Rodriguez signed at closing. She acknowledges that she "did not really read any documents in this matter, but instead relied on the representations and assurances of Mr. Campbell, who was very convincing."

In December 2006, Rodriguez filed this lawsuit against Campbell, Claire Blodgette, America One, Chicago Title Company, and North American Specialty Insurance Company, which furnished America One's surety bond pursuant to the Washington MBPA. Rodriguez alleged that the defendants had fraudulently deprived her of the equity in her home and raised claims including fraud, violation of the Consumer Protection Act, and infliction of emotional distress.

Campbell never responded to the complaint, and the trial court entered a default judgment against him. The trial court dismissed all claims against all of the other defendants. On appeal, Rodriguez challenges only the trial court's June 13, 2008 order dismissing her claims against America One on summary judgment. America One has not filed a respondent's brief.[1]

## II

An appellate court reviews summary judgment orders de novo, "stand[ing] in the same position as the trial court." Greenhalgh v. Dep't of Corr., 160 Wn. App. 706, 713-14, 248 P.3d 150 (2011). We consider the materials before the trial court and construe the facts and inferences in the light most favorable to the nonmoving party. Hubbard v. Spokane County, 146 Wn.2d 699, 706-07, 50 P.3d 602 (2002). Summary judgment is proper only if there is no genuine issue of material fact. CR 56(c); Hubbard, 146 Wn.2d at 707.

The moving party bears the initial burden of showing the absence of an issue of material fact. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Only after the moving party meets its burden of demonstrating that it

---

[1] In her notice of appeal, Rodriguez designated the trial court's May 28, 2008 order striking portions of her supporting declaration containing legal conclusions or inadmissible opinions. Rodriguez has not challenged or even mentioned the ruling in her appellate brief. Accordingly, she has waived the issue. See State v. Sims, 171 Wn.2d 436, 441, 256 P.3d 285 (2011). We also note that Rodriguez's brief contains significant violations of the Rules of Appellate Procedure. The brief has no assignments of error, RAP 10.3(4), and the statement of facts and argument are not supported by any references to the record. RAP 10.3(5), (6).

is entitled to judgment as a matter of law does the burden shift to the nonmoving party to set forth facts establishing a material issue for trial. See Graves v. P.J. Taggares Co., 94 Wn.2d 298, 302, 616 P.2d 1223 (1980). If the moving party does not sustain its initial burden, "summary judgment should not be granted, regardless of whether the nonmoving party has submitted affidavits or other evidence in opposition to the motion." Hash v. Children's Orthopedic Hosp., 110 Wn.2d 912, 915, 757 P.2d 507 (1988).

In its motion for summary judgment, America One asserted that Campbell was an independent contractor whose authority to act on America One's behalf was limited by the terms of an Independent Loan Representative Commissions Agreement (Independent Contractor Agreement) that America One and Campbell executed in 2003. Campbell signed the agreement on behalf of SDCORP1, LLC, and "agree[d] to act as an independent agent for the purpose of originating real estate loans for America One Finance, Inc."

America One maintained that because it acted only as the mortgage broker for the buyer, Claire Blodgette, Campbell's alleged fraudulent representations to Rodriguez persuading her to sell her house necessarily fell outside of the scope of his authority to originate loans. See King v. Riveland, 125 Wn.2d 500, 507, 886 P.2d 160 (1994) (generally, agent acts within the scope of authority if the agent is engaged in the furtherance of the principal's interests). America One further claimed that there was no admissible evidence supporting

Rodriguez's belief that Campbell was acting as America One's agent. See State v. French, 88 Wn. App. 586, 595, 945 P.2d 752 (1997) (agent's apparent authority to bind principal depends on objective manifestations of the principal to a third person and cannot be inferred from acts of the agent). Based on Campbell's purported limited authority to act only as a loan originator independent contractor, America One argued that it was not vicariously liable for his equity-skimming scheme as a matter of law.

America One failed, however, to refute or even address Rodriguez's contention that America One was vicariously liable for Campbell's conduct under provisions of the Washington MBPA. RCW 19.146.0201 declares that it is a violation of the MBPA for a licensed loan originator or mortgage broker, "in connection with a residential mortgage loan," to

> (1) Directly or indirectly employ any scheme, device, or artifice to defraud or mislead borrowers or lenders or to defraud any person;
> (2) Engage in any unfair or deceptive practice toward any person.

Violation of the MBPA is a per se violation of the Consumer Protection Act, chapter 19.86 RCW (CPA). See RCW 19.146.100 (any violation of the MBPA constitutes "an unfair or deceptive act or practice and unfair method of competition in the conduct of trade or commerce" for purposes of the CPA); State v. WWJ Corp., 138 Wn.2d 595, 598, 980 P.2d 1257 (1999).

America One also failed to address the Mortgage Broker License Independent Contractor Agreement (Mortgage Broker Agreement) that the parties executed at the same time as the Independent Contractor Agreement. The Mortgage Broker Agreement expressly referenced former RCW 19.146.200 (2007), in effect at the time Rodriguez sold her house, which provided that a person who independently contracts with a licensed mortgage broker

> need not be licensed if the licensed mortgage broker and the independent contractor have on file with the director a binding written agreement under which the licensed mortgage broker assumes responsibility for the independent contractor's violations of any provision of this chapter or rules adopted under this chapter.

Under the terms of the Mortgage Broker Agreement, America One accepted "responsibility, without limitation, for any and all violations of the [Mortgage Broker Practices Act] committed by the Independent Contractor named herein." Because it expressly accepted responsibility for Campbell's violations of the MBPA, America One's reliance on the alleged limited scope of authority set forth in the Independent Contractor Agreement was misplaced.

America One did not dispute that Rodriguez had raised factual issues as to whether Campbell's conduct occurred "in connection with a residential mortgage loan" and whether it constituted a scheme to "defraud any person" or a "deceptive practice toward any person," thereby violating the MBPA. Nor did America One dispute that any violations created a factual issue as to whether Rodriguez could recover for a per se CPA violation. See Keyes v. Bollinger, 31

Wn. App. 286, 290, 640 P.2d 1077 (1982) (to establish claim for per se CPA violation, plaintiff must show (1) the existence of a pertinent statute; (2) its violation; (3) that such violation was the proximate cause of damages sustained; and (4) that they were within the class of people the statute sought to protect).

"It is the responsibility of the moving party to raise in its summary judgment motion all of the issues on which it believes it is entitled to summary judgment." White v. Kent Med. Ctr., Inc., P.S., 61 Wn. App. 163, 168, 810 P.2d 4 (1991). Here, because America One did not dispute that it was responsible for Campbell's violations of the MBPA under the terms of the Mortgage Broker Agreement or that there were genuine factual issues as to whether his conduct violated the MBPA, America One failed to satisfy its initial burden of demonstrating that it was entitled to summary judgment on Rodriguez's CPA claim.

Accordingly, the burden never shifted to Rodriguez to demonstrate the existence of a genuine factual issue and America One was not entitled to summary judgment. See Jacobsen v. State, 89 Wn.2d 104, 110-11, 569 P.2d 1152 (1977). We reverse the entry of summary judgment in favor of America One and remand for further proceedings.

Reversed and remanded.

We concur: